UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

KAHILILIA DAVIS,

                                            Case No. 2:20-cv-12145

                                            Hon. Stephen J. Murphy

Plaintiff,

v.

36th DISTRICT COURT (for the City of
Detroit), AND NANCY C. BLOUNT (in her
individual capacity, and as the 36th District
Court Former-Chief Judge and Administrator),

Defendants.
_____/

| WEBSTER LAW OFFICE, PLLC | ALLEN BROTHERS, PLLC |
|---|---|
| Dionne E. Webster-Cox (P70422) | James P. Allen, Sr. (P52885) |
| Co-Counsel for Plaintiff | Lindsey R. Johnson (P67091) |
| 33150 Schoolcraft-Ste 201 | Attorneys for Defendant, 36th Dist. |
| Livonia, MI 48150 | 400 Monroe, Ste. 620 |
| (734) 215-2444 | Detroit, MI 48226 |
| DEWC@WebsterLawOfficePLLC.com | (313) 962-7777 |
| | jamesallen@allenbrotherspllc.com |
| | ljohnson@allenbrotherspllc.com |
| SPECTRUM LEGAL SERVICES | |
| Michael H. Fortner (P46541) | BOGAS & KONCIUS, PC |
| Co-counsel for Plaintiff | Kathleen L. Bogas (P25164) |
| 24100 Southfield Rd, Ste. 203 | Brian E. Koncius (P69278) |
| Southfield, MI 48033 | Attorneys for Defendant Blount |
| (248) 432-7436 | 31700 Telegraph Rd., Ste. 160 |
| fortner@spectrumattorneys.com | Bingham Farms, MI 48025 |
| | (248) 502-5000 |
| | kbogaslaw@kbogaslaw.com |

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT 36TH DIST. CT. AND
DEFENDANT BLOUNT'S MOTIONS TO DISMISS**

In response to Defendant 36th Dist. Ct. and Defendant Blount's separate

Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), Plaintiff Davis submits this Opposition to the Motions to Dismiss.  A

Brief supporting this Opposition follows.

Respectfully submitted,

/s/ Dionne E. Webster-Cox
Webster Law Office, PLLC
Dionne E. Webster-Cox (P70422)
Co-Counsel for Plaintiff
33150 Schoolcraft-Ste 201
Livonia, MI 48150
(734) 215-2444

Dated: December 29, 2020

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................i

INDEX OF AUTHORITIES...................................................................ii

I.    STATEMENT OF FACTS ...........................................................2

II.   STANDARD OF REVIEW .........................................................4

III.  ARGUMENT................................................................................6

    *A. DEFENDANT BLOUNT'S ARGUMENT THAT THE PORTIONS OF THE COMPLAINT THAT RAISE ALLEGATIONS BEFORE 2017 SHOULD BE BARRED BY STATUTE OF LIMITATIONS IS INACCURATE. PLAINTIFF DAVIS PLEADS CONTINUING VIOLATIONS THAT BEGAN ON OR ABOUT NOVEMBER 2016* ..................................7

    *B. NEITHER DEFENDANT 36TH DIST. CT. NOR DEFENDANT BLOUNT IS NOT ABSOLUTELY IMMUNE FROM LAWSUITS*..................................................8

        1.   If Defendant 36TH Dist. Ct. is immune from suit, it is only immune from actions engaged in under governmental function. ............................................8

        2.   Defendant Blount cannot be cloaked in judicial, absolute immunity because the allegations were not part of a court decision, but rather part of Defendant Blount's administrative duties as chief justice.............................10

        3.   Plaintiff Davis filed a valid suit against Defendant Blount both in her personal capacity as well as in her capacity as Chief Judge of the 36th District Court, therefore Defendant Blount's Motion to Dismiss must be **denied** in its entirety...................................................................................................12

    *C. THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY AS THERE IS NO UNDERLYING STATE COURT DECISION* ..............................................14

    *D. DEFENDANT BLOUNT WAS MOTIVATED BY EVIL INTENT AND DEMONSTRATED A RECKLESS OR CALLOUS INDIFFERENCE TO PLAINTIFF DAVIS'S CONSTITUTIONAL RIGHTS* .........................................................15

IV.   CONCLUSION..........................................................................16

V.    CERTIFICATE OF SERVICE..................................................17

# INDEX OF AUTHORITIES

## Cases

*Alexander v. Local 496, Laborers' Int'l Union of North America*, 177 F.3d 394 (6th Cir. 1999))..................................................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009) ......................................................5

*Barnes v. Winchell*, 105 F.3d 1111 (6th Cir. 1997) .....................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................5

*Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997) .........11

*Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956 (6th Cir. 2013) ..................8

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ...............................5

*District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)..............14

*Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925 (6th Cir. 2020) .........16

*Doe v. Wigginton,* 21 F.3d 733 (6th Cir. 1994) ...........................................9

*Edelman v. Jordan* , 415 U.S. 651 (1974) ..................................................8

*Ex parte Young,* 209 U.S. at 160–62) .........................................................9

*Forrester v. White,* 484 U.S. 219 (1988) ........................................... 10, 11

*Goldsmith v. Sharrett*, 614 Fed. Appx. 824, 828-829 (6th Cir. 2015)....................7

*Hafer v. Melo*, 502 U.S. 21 (1991) .............................................................12

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993))..................................8

*Holland v. United States*, No. 17-13926, at *6 (E.D. Mich. Mar. 7, 2019)..............4

*Howlett v. City of Warren*, 4:17-CV-11260-TGB (E.D. Mich. Sep. 16, 2019).........8

*Iannucci v. Switalski*, No. 16-2534, 2017 U.S. App. LEXIS 27658 (6th Cir. Apr. 10, 2017)..............................................................................................10

*Jones v. City of Elyria*, 947 F.3d 905 (6th Cir. 2020)................................15

*Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396 (6th Cir. 2019) ................................................................................................9

*Kentucky v. Graham*, 473 U.S. 159 (1985).................................................13

*King v. McCree*, 573 F. App'x 430 (6th Cir. 2014) ...................................11

*Kolb v. Dep't of Mental Retardation & Developmental Disabilities*, 721 F. Supp. 885 (N.D. Ohio 1989)....................................................................13

*Matthews v. Drug Enf't Admin.*, 629 F. App'x 723 (6th Cir. 2015).........................5

*McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006).......................................14

*Mireles v. Waco*, 502 U.S. 9 (1991)............................................................10

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)...............12

*Monroe v. Pape*, 365 U.S. 167 (1961 ........................................................13

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002).......7, 8

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir.1990)...................4

*Progressive Marathon Ins. v. Blue Cross Blue Shield of Mich.*, No. 16-10559, at *2 (E.D. Mich. Nov. 22, 2016).........................................................5, 6

*Quern v. Jordan,* 440 U.S. 332 (1979) ....................................................9

*Reguli v. Guffee*, 371 F. App'x 590 (6th Cir. 2010)...............................14

*Robinson v. Genesee Cnty. Sheriff's Dep't*, No. 16-cv-13805, at *10 (E.D. Mich. Aug. 30, 2018) ...................................................................................7

*Robinson v. Genesee Cnty. Sheriff's Dep't*, No. 16-cv-13805, at *9-10 (E.D. Mich. Aug. 30, 2018) .............................................................................7

*Rooker v. Fidelity Trust Co.* 263 U.S. 413(1923)..................................14

*S & M Brands, Inc. v. Cooper* , 527 F.3d 500 (6th Cir. 2008) .................9

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...............................................11

*Sharpe v. Cureton*, 319 F.3d 259 (2003) ....................................... 6, 7, 8

*Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 (1983) .................................9

*Smith v. Wade*, 461 U.S. 30 (1983)........................................................15

*Smyth v. Lubbers*, 398 F. Supp. 777 (W.D. Mich. 1975) .......................13

*Tolbert v. Ohio DOT*, 172 F.3d 934 (6th Cir. 1999)................................7

*Wilburn v. United States*, 616 F. App'x 848 (6th Cir. 2015)...................5

*Will v. Mich. Dept. of State Police* , 491 U.S. 58 (1989),.........................8

## Statutes

42 U.S.C. § 1983 ............................................................... 13, 14, 15

## Court Rules

Fed. R. Civ. P. 12(b)(1)............................................................2

Fed. R. Civ. P. 12(b)(6)..................................................... 2, 3, 4

## Treatises

Wright & A. Miller, Federal Practice and Procedure § 1356 (3d ed. 2004)) ...........3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

KAHILILIA DAVIS,

                                                        Case No. 2:20-cv-12145
                                                        Hon. Stephen J. Murphy

Plaintiff,

v.

36th DISTRICT COURT (for the City of
Detroit), AND NANCY C. BLOUNT (in her
individual capacity, and as the 36th District
Court Former-Chief Judge and Administrator),

Defendants.

_____/

| WEBSTER LAW OFFICE, PLLC | ALLEN BROTHERS, PLLC |
|---|---|
| Dionne E. Webster-Cox (P70422) | James P. Allen, Sr. (P52885) |
| Co-Counsel for Plaintiff | Lindsey R. Johnson (P67091) |
| 33150 Schoolcraft-Ste 201 | Attorneys for Defendant, 36th Dist. |
| Livonia, MI 48150 | 400 Monroe, Ste. 620 |
| (734) 215-2444 | Detroit, MI 48226 |
| DEWC@WebsterLawOfficePLLC.com | (313) 962-7777 |
| | jamesallen@allenbrotherspllc.com |
| | ljohnson@allenbrotherspllc.com |
| SPECTRUM LEGAL SERVICES | |
| Michael H. Fortner (P46541) | BOGAS & KONCIUS, PC |
| Co-counsel for Plaintiff | Kathleen L. Bogas (P25164) |
| 24100 Southfield Rd, Ste. 203 | Brian E. Koncius (P69278) |
| Southfield, MI 48033 | Attorneys for Defendant Blount |
| (248) 432-7436 | 31700 Telegraph Rd., Ste. 160 |
| fortner@spectrumattorneys.com | Bingham Farms, MI 48025 |
| | (248) 502-5000 |
| | kbogaslaw@kbogaslaw.com |

_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT
36TH DIST. CT. AND DEFENDANT BLOUNT'S MOTIONS TO DISMISS**

Defendants, 36th District Court (for the City of Detroit) ("Defendant 36th Dis. Ct." Or "36th Dis. Ct."), and Nancy C. Blount (in her official capacity and as the 36th District Court Former-Chief Judge and Administrator) ("Defendant Blount" or "Blount") (collectively "Defendants"), have each separately filed a Motion to Dismiss under 12(b)(1) and 12(b)(6).  Plaintiff Davis responds in Opposition to both Motions to Dismiss under 12(b)(1) and 12(b)(6), stating as follows:

## I.     STATEMENT OF FACTS

Undermining the very basis upon which this country was built.  Violating both the United States Constitution and Michigan Constitution. In the DEFENDANTS' world, it is okay to discriminate and taunt someone because of her weight.  In the DEFENDANTS' world, it is a judicial act deny plaintiff access to the restroom.  Creating policies that celebrate rogue process servers and oppressive landlords, by denying tenants proper service is acceptable and revered. In the DEFENDANTS' world, when a chief judge engages in discrimination and unconstitutional acts, the chief judge is cloaked in immunity.  And the court that allows her to do so is immune as well.  ***No one would want to live in the DEFENDANTS' world!***

Defendants 36th Dist. Ct. and Blount attempt to redirect the Court's attention from the discrimination Plaintiff Davis suffered at the hands of both Defendants by painting Plaintiff Davis as a disparaged judge seeking revenge for a

complaint filed with the JTC.  As Plaintiff Davis has articulated in the Complaint for the instant matter, this could not be further from the truth.  Plaintiff Davis suffered years of derogatory comments, belittling treatment, and undermining of her ability to conduct her job in any meaningful way.

As Plaintiff Davis states in the Complaint for this matter, Defendants collectively allowed for an atmosphere of hostility and discrimination.  Plaintiff Davis was subjected to punishment for asserting her rights for reasonable accommodations – this punishment resulted in the public humiliation of Plaintiff Davis when she was unable to reach the restroom in time and urinated on herself in the hall while trying to get to the restroom in time.

The behavior against Plaintiff Davis began before she even started her first day as an elected judge.  Plaintiff Davis became the subject of a smear campaign – not during the election, but after the election – as Defendants refused to allow her access to her insurance, her email, her courtroom, and her elected position. Defendants went against the will of the people and ostracized Plaintiff Davis such that her ability to perform her elected position became impossible.

But this matter is not about politics.  This matter is about Defendant Blount's discrimination towards Plaintiff Davis and the district court that turned a blind eye to the chief judge's behavior and mistreatment.  Sanctioning this behavior is the essence of injustice.  If there is injustice within the daily

administration of the district court, how can there be justice anywhere within the district court. Plaintiff Davis, in attempting to perform the duties for which she was elected, attempted to right wrongs in refusing to recognize service when it was obvious that when a particular person served a defendant they did so incorrectly and illegally.  Plaintiff Davis was protecting those who may not have a voice of their own within the judicial system.  Her attempts to protect those who may not be able to protect themselves – and to protect the judicial system itself – were thwarted when she was stripped of her judicial powers.

Defendants would also have you believe that this matter is an attempt to "re-litigate" a judicial decision by a state court.  Defendants misstate the facts.  There is no judicial decision by a state court regarding the manner in which Plaintiff Davis was treated by the Defendants.  Although Defendants cite the JTC matter, they are unable to cite any final decision from any case or controversy because there isn't a case or controversy before a state court or an administrative agency regarding Defendants' discriminatory actions.

## II.      STANDARD OF REVIEW

A motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) involves either a facial or a factual challenge to the court's jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). When a motion challenges the factual existence of subject matter

jurisdiction, the court has wide discretion regarding the materials it may consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, such as affidavits or documents. *Id*. When a motion raises a facial challenge to the sufficiency of the pleading, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the nonmoving party, as it does when reviewing a motion under Fed. R. Civ. P. 12(b)(6). *Id. See Holland v. United States*, No. 17-13926, at *6 (E.D. Mich. Mar. 7, 2019) ("In addressing a motion brought under Fed. R. Civ. P. 12(b)(1) that mounts a facial challenge to the existence of subject matter jurisdiction, the Court 'takes the allegations in the complaint as true,' inquiring whether these allegations establish a basis for the exercise of subject matter jurisdiction.") (Exhibit 1).

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the "formal sufficiency of the statement of the claim for relief." *Matthews v. Drug Enf't Admin.*, 629 F. App'x 723, 726 (6th Cir. 2015) (citing 5B C. Wright & A. Miller, Federal Practice and Procedure § 1356, p. 354 (3d ed. 2004)). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)); *see Progressive Marathon Ins. v. Blue Cross Blue Shield of Mich.*, No. 16-10559, at *2 (E.D. Mich. Nov. 22, 2016) ("When facing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court construes the complaint in the light most favorable to the non-moving party and accepts all factual allegations as true.") (Exhibit 2).

The non-moving party will overcome the motion to dismiss only if its complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id*. In deciding the motion, the Court may only consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which the Court may take judicial notice. *Currier v. First Resolution Inv. Corp*., 762 F.3d 529, 533 (6th Cir. 2014); *Progressive Marathon Ins. v. Blue Cross Blue Shield of Mich.*, No. 16-10559, at *2 (E.D. Mich. Nov. 22, 2016) (Exhibit 2).

### III.     ARGUMENT

**A.      *Defendant Blount's Argument That the Portions of The Complaint That Raise Allegations Before 2017 Should Be Barred by Statute of Limitations Is Inaccurate. Plaintiff Davis Pleads Continuing Violations That Began on Or About November 2016***

Under the doctrine of continuing violation, a statute of limitations will not bar a claim when the violation has occurred over a period of time, even when some of the violation occurred prior to the expiration of the statute of limitations. *Sharpe v. Cureton*, 319 F.3d 259, 267 (2003). To meet this standard, the plaintiff must prove that: (1) defendant's wrongful conduct continued after the precipitating event that began the pattern; (2) injury to the plaintiff must continue to accrue after that event; (3) further injury to the plaintiff must have been avoidable if the defendants had at any time ceased their wrongful conduct. *Tolbert v. Ohio DOT*, 172 F.3d 934, 940 (6th Cir. 1999).

In addition, there are two categories of violations: (1) those alleging serial violations and (2) those identified with a longstanding and demonstrable policy of discrimination. *Sharpe*, 319 F.3d at 266. *See  Robinson v. Genesee Cnty. Sheriff's Dep't*, No. 16-cv-13805, at *9-10 (E.D. Mich. Aug. 30, 2018) (Exhibit 3).

In *Goldsmith v. Sharrett*, the Supreme Court distinguished a continuing violation from discrete events. "Continuing violations in the Section 1983 context are akin to hostile-work environment claims where the harm 'cannot be said to occur on any particular day' and individual incidents are not actionable on their own." *Goldsmith v. Sharrett*, 614 Fed. Appx. 824, 828-829 (6th Cir. 2015) quoting

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 114 (2002). When the alleged "continuing violation" consists of actions that are actionable on their own, they do not qualify in the aggregate as a continuing violation. *Robinson v. Genesee Cnty. Sheriff's Dep't*, No. 16-cv-13805, at *10 (E.D. Mich. Aug. 30, 2018) (Exhibit 3).

Under the continuing violation doctrine, "a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Sharpe*, 319 F.3d at 267 (quoting *Alexander v. Local 496, Laborers' Int'l Union of North America*, 177 F.3d 394, 408 (6th Cir. 1999)). *See Howlett v. City of Warren*, 4:17-CV-11260-TGB, at *30 (E.D. Mich. Sep. 16, 2019).

Plaintiff Davis has alleged unlawful behavior, including those with regard to "employment practices" that cannot be said to occur on any particular day but, occur over a series of days or years." *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). *See Howlett* at *31.

**B.   *Neither Defendant 36TH Dist. Ct. Nor Defendant Blount Is Absolutely Immune from Lawsuits***

   *1.    If Defendant 36TH Dist. Ct. is immune from suit, it is only immune from actions engaged in under governmental function.*

The Sixth Circuit Court has ruled on sovereign immunity cases, finding that "the Supreme Court announced an exception to Eleventh Amendment sovereign immunity in *Ex parte Young* for claims [under federal law] for injunctive relief against individual state officials in their official capacities." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). The Sixth Circuit further explained:

> [D]eclaratory relief compelling a state official to comply with federal law, *Will* [*v. Mich. Dept. of State Police* , 491 U.S. 58,] 71 & n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 [ (1989) ], regardless of whether compliance might have an ancillary effect on the state treasury, *Edelman* [*v. Jordan* , 415 U.S. 651,] 667–68, 94 S.Ct. 1347, 39 L.Ed.2d 662 [ (1974) ] ; *Doe v. Wigginton,* 21 F.3d 733, 737 (6th Cir. 1994). "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (citing *Ex parte Young,* 209 U.S. at 160–62, 28 S.Ct. 441 ). The *Ex parte Young* exception does not, however, extend to any retroactive relief. *Quern v. Jordan,* 440 U.S. 332, 338, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *S & M Brands, Inc. v. Cooper* , 527 F.3d 500, 507–08 (6th Cir. 2008).

> *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 417 (6th Cir. 2019).

Here, Plaintiff Davis seeks to hold Defendant 36th Dist. Ct. accountable for allowing Defendant Blount to engage in such extreme and outrageous behavior under its very eyes.  Any claims substantiated against Defendant Blount cannot be remedied in a vacuum.  To allow Defendant 36th Dist. Ct. to remain unaccountable for allowing Defendant Blount to treat Plaintiff Davis – a judge in its courtrooms –

as despicably as it did, cannot stand for justice. Without any oversight, Defendant

Blount was able to treat Judge Davis as a second-class citizen who was not entitled

to safe working conditions, reasonable accommodations, training, and federally

protected rights.

2.  *Defendant Blount cannot be cloaked in judicial, absolute immunity because the allegations were not part of a court decision, but rather part of Defendant Blount's administrative duties as chief justice.*

"It is a well-entrenched principle in our system of jurisprudence that judges

are generally absolutely immune from civil suits for money damages." *Barnes v.*

*Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity is

overcome in two instances: (1) where the judge acts in a non-judicial capacity; or

(2) where the judge acts "in the complete absence of all jurisdiction." *Mireles v.*

*Waco*, 502 U.S. 9, 11-12 (1991). *Iannucci v. Switalski*, No. 16-2534, 2017 U.S.

App. LEXIS 27658 (6th Cir. Apr. 10, 2017) (Exhibit 4).

In examining the functions normally performed by a judge, courts have

found that "paradigmatic judicial acts" are those that involve "resolving disputes

between parties who have invoked the jurisdiction of a court." *Forrester v. White,*

484 U.S. 219, 227 (1988); see also *Antoine*, 508 U.S. at 435-36 (recognizing that

the "touchstone" for judicial immunity has been the "performance of the function

of resolving disputes between parties, or of authoritatively adjudicating private

rights." (quotation omitted)). Moreover, this court has stated that whenever an

10

action taken by a judge is not an adjudication between parties, it is less likely that the action will be deemed judicial. Cameron, 38 F.3d at 271. However, "the informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." *Forrester*, 484 U.S. at 227. With this framework in mind, we examine those cases that have considered whether actions alleged to have been prosecutorial were undertaken in a judge's judicial capacity. *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997).

On the other hand, the Court has held that the act of demoting and discharging a court employee, along with other acts "involved in supervising court employees and overseeing the efficient operation of a court", is not a judicial one. *Forrester*, 484 U.S. at 229 (1988). "Judges who perform these acts do so in an administrative capacity only." *King v. McCree*, 573 F. App'x 430, 439 (6th Cir. 2014) (internal quotation omitted).

Here, Defendant Blount was not "resolving disputes between parties." Defendant Blount was acting outside the judicial capacity, in the administrative functions of running a court.  That is not to say that Defendant Blount's actions were lawful as related to Plaintiff Davis – the actions were not lawful – but the actions were not part of a case and controversy before Defendant Blount for adjudication.

3.  *Plaintiff Davis filed a valid suit against Defendant Blount both in her personal capacity as well as in her capacity as Chief Judge of the 36th District Court, therefore Defendant Blount's Motion to Dismiss must be **denied** in its entirety.*

Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, *e. g., Scheuer v. Rhodes*, 416 U.S. 232, 237-238 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978).

Officials may be sued in both their official capacity and personal/individual capacity. An official may be held personally liable for damages under § 1983 based on actions taken in his or her official capacity. *See Hafer v. Melo*, 502 U.S. 21 (1991). The Court in *Hafer* held that state officials, when sued in their individual capacities, were "persons" within the meaning of § 1983 and that such suits were not barred by the Eleventh Amendment. State officers are not absolutely immune from personal liability solely by virtue of the "official" nature of their acts.

To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal

right. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer* 502 U.S. at 25 (internal citations omitted).

If a Section 1983 plaintiff successfully demonstrates that a defendant state official's actions, conducted under the color of law, had caused plaintiff to be deprived of a federally protected right, then those actions are an individual conduct and the defendant will be personally liable to the plaintiff for damages. *Kolb v. Dep't of Mental Retardation & Developmental Disabilities*, 721 F. Supp. 885, 897 (N.D. Ohio 1989).

> An official action which is found to have violated constitutional rights is deemed "ultra vires", beyond the official's authority because the state cannot lawfully authorize its officials to violate the constitution. . . . If a person acts under color of law, it is irrelevant whether the official was acting within or without the scope of his employment by common law standards.
>
> *Id.*, citing *Smyth v. Lubbers*, 398 F. Supp. 777, 784 (W.D. Mich. 1975).

Here, Defendants have simply misstated the law in their respective motions to dismiss. Plaintiff's complaint expressly named Defendant Blount in her "individual" capacity, wherein she is liable for suit in such capacity because her actions and inactions were conducted under the color of law and that, as a result of

her actions or inactions, she had violated Plaintiff Davis's constitutional right to be free from discriminatory actions.

On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See*, e. g., *Monroe v. Pape*, 365 U.S. 167 (1961).

The defendant in a personal-capacity action may, depending on her position, be able to assert personal immunity defenses, such as **objectively reasonable reliance on existing law**. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (emphasis added). Here, Defendant Blount has not provided any objectively reasonable justification as to why the discriminatory practice was being used.

Plaintiff Davis has established at the pleading stage of litigation that Defendant Blount had violated Plaintiff's right to be free from discrimination, that Defendant Blount was acting under the color of law, and, that Defendant Blount was working as a state official; therefore, Defendant Blount is not entitled to an immunity defense; and, as an individual, she will not enjoy sovereign immunity.

**C.    *The Rooker-Feldman Doctrine Does Not Apply as There Is No Underlying State Court Decision***

The key inquiry in deciding whether *Rooker-Feldman (Rooker v. Fidelity Trust Co.* 263 U.S. 413(1923)) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983) applies is determining the source of the plaintiffs' alleged injury. "If the source of the injury is the state court decision, then the

*Rooker-Feldman* doctrine would prevent the district court from asserting

jurisdiction. If there is some other source of injury, such as a third party's actions,

then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451

F.3d 382, 393 (6th Cir. 2006). The majority of claims against the Williamson

County defendants could be read as challenges to state court orders which are

barred by the *Rooker-Feldman* doctrine. *Reguli v. Guffee*, 371 F. App'x 590, 595

(6th Cir. 2010).

Defendant 36th Dist. Ct. attempts to compare *Reguli* by stating that Plaintiff

Davis is attempting to appeal a decision of a denial of superintending control.

Plaintiff Davis does no such thing.  Rather, Plaintiff Davis brings light to the ways

in which retaliation and discrimination against Plaintiff Davis ran rampant

throughout the courthouse.

**D.**   ***Defendant Blount was Motivated by Evil Intent and Demonstrated a Reckless or Callous Indifference to Plaintiff Davis's Constitutional Rights***

Through words and actions, Defendant Blount has shown that the

discriminatory practices were motivated by an evil intent and demonstrated a

reckless or callous indifference, in regard to a person's, in this case Plaintiff Davis,

federally protected, constitutional rights. *Smith v. Wade*, 461 U.S. 30, 33, 42

(1983).

"[M]alice is defined as the state of mind under which a person intentionally

does a wrongful act without a reasonable lawful excuse and with the intent to

inflict injury or under circumstances from which the law will infer <u>an evil intent</u>." *Jones v. City of Elyria*, 947 F.3d 905, 921 (6th Cir. 2020) (internal citations omitted) (emphasis added).

"To act with reckless or callous indifference, a public official must do more than be aware of a substantial risk of serious harm. The official's response to that harm must also be conscience shocking. And if the official chooses a response motivated by a legitimate governmental purpose, this element will generally be absent." *Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020) (internal citations and quotations omitted).

## IV.   CONCLUSION

Defendants' Motion to Dismiss should be **denied**. Plaintiff Davis has plead viable claims against both Defendant 36th Dist. Ct. and Defendant Blount.  Plaintiff Davis's claims should proceed to trial.

Respectfully submitted,

<u>/s/ Dionne E. Webster-Cox</u>
Webster Law Office, PLLC
Dionne E. Webster-Cox
(P70422)
Co-Counsel for Plaintiff
33150 Schoolcraft-Ste 201
Livonia, MI 48150
(734) 215-2444

Date: December 29, 2020

16

# V.     CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2020, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system, which will send notification

of such filing to the attorneys of record.

/s/ Dionne E. Webster-Cox
Webster Law Office, PLLC
Dionne E. Webster-Cox
(P70422)
Co-Counsel for Plaintiff
33150 Schoolcraft-Ste 201
Livonia, MI 48150
(734) 215-2444

Exhibit 4

Neutral
As of: December 28, 2020 9:33 PM Z

## *Iannucci v. Switalski*

United States Court of Appeals for the Sixth Circuit

April 10, 2017, Filed

No. 16-2534

**Reporter**
2017 U.S. App. LEXIS 27658 *

YANN IANNUCCI, Plaintiff-Appellant, v. MARK SWITALSKI, Judge, Defendant-Appellee.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Subsequent History:** US Supreme Court certiorari denied by *Iannucci v. Switalski, 138 S. Ct. 470, 199 L. Ed. 2d 362, 2017 U.S. LEXIS 6993 (U.S., Nov. 27, 2017)*

**Prior History:** [*1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

*Iannucci v. Switalski, 2016 U.S. Dist. LEXIS 139503 ( E.D. Mich., Oct. 7, 2016)*

## Core Terms

district court, judicial immunity, expedited, appeals, damages, immune

**Counsel:** YANN IANNUCCI, Plaintiff - Appellant, Pro se, Roseville, MI.

**Judges:** Before: GILMAN and GIBBONS, Circuit Judges; HOOD, District Judge.[*]

## Opinion

ORDER

Yann Iannucci, a Michigan resident proceeding pro se, appeals a district court order dismissing his civil complaint under *28 U.S.C. § 1915(e)(2)*. Iannucci has filed a "[m]otion for expedited [d]eclaratory [judgment]." This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See Fed. R. App. P. 34(a)*.

In 2016, Iannucci filed a complaint seeking monetary damages from Judge Mark Switalski, who presided over his Michigan child-support case. Generally, Iannucci claimed that Judge Switalski erroneously applied the law in his case, which "created a friv[o]lous financial burden and also a felony conviction." The district court dismissed Iannucci's complaint under *§ 1915(e)(2)*, concluding that Judge Switalski was immune from suit. Iannucci now appeals.

We review de novo a district court's dismissal of a complaint pursuant to *§ 1915(e). Grinter v. Knight, 532 F.3d 567, 571-72 (6th Cir. 2008)*. A complaint that is frivolous or fails to state a claim upon which relief may be granted is subject to sua sponte dismissal. *See id. at 572*. To avoid [*2] dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S.*

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

2017 U.S. App. LEXIS 27658, *2

*662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages." *Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997)*. Absolute judicial immunity is overcome in only two instances: (1) where the judge acts in a non-judicial capacity; or (2) where the judge acts "in the complete absence of all jurisdiction." *Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)*.

Iannucci does not claim that either of these exceptions applies, but alleges generally that Judge Switalski incorrectly applied federal law in his case and failed to protect his constitutional rights. However, there is no exception to absolute judicial immunity based on error by a judge in performing an act in a judicial capacity, even if the judge acted maliciously or in excess of his authority. *See Barnes, 105 F.3d at 1115*. Therefore, the district court correctly dismissed Iannucci's complaint based on **[*3]** Judge Switalski's immunity from suit.

Accordingly, the district court's order dismissing Iannucci's complaint is **AFFIRMED**. Iannucci's motion for expedited declaratory judgment is **DENIED**.

---

End of Document

Exhibit 3

**AARON ANTWAUN ROBINSON, Plaintiff,**

**v.**

**GENESEE COUNTY SHERIFF'S DEPARTMENT, et al, Defendants.**

Case No. 16-cv-13805.

**United States District Court, E.D. Michigan, Northern Division.**

August 30, 2018.

Aaron Antwaun Robinson, Plaintiff, pro se.

Lt. Gerald Joseph Park & Deputy FNU Rainwater, Defendants, represented by Barney R. Whitesman.

Genesee County, Defendant, represented by T. Joseph Seward, Seward Peck & Henderson PLLC.

# ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION TO PRECLUDE TESTIMONY, AND DENYING MOTION TO RECONSIDER APPOINTMENT OF COUNSEL

THOMAS L. LUDINGTON, District Judge.

On October 26, 2016, Plaintiff Aaron Robinson filed a complaint which alleged that Defendants Genesee County Sheriff's Department, Sergeant Gerald Park, Deputy Ryan Rainwater, Deputy F/N/U Hoover, and ten other John Does repeatedly beat and otherwise mistreated Robinson while he was confined in the Genesee County Jail. ECF No. 1. Defendant Rainwater was served on December 16, 2016. In response to the complaint, Rainwater filed a motion for a more definite statement, ECF No. 6, seeking additional information regarding "which Defendant allegedly committed what tort and when." *Id.* at 4. On January 16, 2017, the Genesee County Sheriff's Department appeared for the purpose of filing a motion to dismiss, arguing that a sheriff's department is not an independent legal entity that is amenable to suit under Michigan law. ECF No. 14. On January 30, 2017, Robinson filed a motion to substitute Genesee County for the Sheriff's Department as a Defendant, acknowledging that the Sheriff's Department should not have been named as a Defendant. On February 14, 2017, Plaintiff filed a motion seeking leave to file an amended complaint and a motion seeking an extension of the service deadline. ECF Nos. 25, 26.

On March 24, 2017, the Court issued an opinion and order addressing the pending motions. ECF No. 36. Among other things, the Court dismissed the Genesee County Sheriff's Department, but directed Robinson to file an amended complaint which provided a more definite statement and added Genesee County as a Defendant on or before April 7, 2017. Robinson did not file an amended complaint that provided a more definite statement at the deadline. After being directed to show cause why the suit should not be dismissed for failure to provide a more definite statement, *see* ECF No. 40, Robinson filed a more definite statement in narrative form. ECF No. 47. Robinson also requested, for the third time, that the deadline to serve Defendant Hoover be extended. ECF No. 46. On June 2, 2017, the Court granted Robinson another extension of time to file an amended complaint which complied with the previous order to provide a more definite statement, but denied the motion for an extension of time to serve Defendant Hoover. ECF No. 55.

On June 16, 2017, Robinson filed an amended complaint which incorporated, in pleading form, the information in his previously filed more definite statement. ECF No. 56. On June 30, 2017, Defendants filed a motion to strike portions of the amended complaint, ECF No. 57, and an answer to the amended complaint. ECF No. 58. On August 14, 2017, the Court granted in part Defendant's motion to strike portions of the amended complaint, specifically Robinson's conspiracy claim (which Robinson stipulated to dismiss). ECF No. 60.

Defendants Genesee County, Park, and Rainwater filed motions for summary judgment. ECF Nos. 91, 112, 113. Defendant Genesee County also filed a motion to preclude the testimony of two of Robinson's witnesses. ECF No. 104. Robinson filed a motion for reconsideration of appointment of counsel. ECF No. 135. For the following reasons, the motions for summary judgment will be granted and Genesee County's motion to preclude testimony will be denied as moot. Since Defendants' motions for summary judgment will be granted, Robinson's motion for reconsideration of appointment of counsel will be denied.

# I.

In the amended complaint, Robinson names F/N/U Rainwater, Sergeant Gerald Park, and Genesee County as Defendants. Am. Compl., ECF No. 56. Robinson alleges that he was arrested in August 2011 and charged with "larceny, firearms, home invasion and with the murder of a highly respected retired Genesee County Sheriff Department Lieutenant who arrived home while the burglary was in process." *Id.* at 3-4. While awaiting trial, Robinson was incarcerated at the Genesee County Jail. *Id.* at 3.

Robinson alleges that, during his incarceration, "he was assaulted, with varying degrees of severity, by [Genesee County Jail] guards 3-4 times per week." *Id.* at 4. "Each and every one of Plaintiff's assailants referenced their relationship with the slain lieutenant as the reason they were assaulting[,] beating, threatening and torturing the Plaintiff." *Id.* Robinson asserts that the assaults "typically involved 3-4 guards" who "on most occasions wore black gloves during the assaults." *Id.* Robinson was allegedly assaulted in his cell, in the common area, and in solitary confinement. *Id.* at 4-5. Sometimes, Robinson was handcuffed before the assaults occurred. *Id.* at 4.

According to Robinson, Defendant Rainwater "was present during Plaintiff's entire period of incarceration at GCJ and frequently bragged about being an MMA amateur fighter. He was a ring-leader and participated in at least 50% of the beatings." *Id.* at 13. Defendant Park, also a "ringleader," participated in about half the beatings. *Id.* Robinson asserts that Park used his position of authority to condone the assaults and provide "false testimony in the various misconduct hearings." *Id.* at 14. Robinson alleges that Park's employment was terminated because a civil suit exposed Park's chronic mistreatment of inmates. *Id.*

During his incarceration, Robinson was repeatedly placed in solitary confinement (spending a total of seven months in solitary). *Id.* at 5. Robinson alleges that, when falsely accused of charges that would result in solitary confinement, the guards interfered with his ability to defend himself at the hearing. *Id.* at 6. While in solitary confinement, Robinson allegedly experienced repeated abuse, including being denied meals. *Id.* at 5. He also alleges that, on at least one occasion, the water to his cell was turned off and then he was pepper sprayed. *Id.* at 6. In general, Robinson did not receive medical treatment for his injuries. *Id.* at 11.

Robinson provides several descriptions of specific assaults. For example, he alleges that the first assault occurred four days after his arrest. Robinson was accused of throwing a tissue out of his cell by second shift personnel. When third shift personnel came on duty, they removed Robinson's cellmate, handcuffed

Robinson, and beat him. *Id.* at 7. The last incident occurred on October 30, 2013 when Robinson was being transferred to Michigan Department of Corrections custody.[1] While processing Robinson, Rainwater allegedly punched him in the right eye. *Id.* at 12.

Robinson alleges that he kept a journal of the beatings. *Id.* at 8. However, the journal was confiscated when he was placed in solitary confinement and he has not recovered it. *Id.* at 9. Robinson also alleges that he phoned a friend after each attack and informed her. He further alleges that his sister visited him twice and on both occasions saw bruises on his body. *Id.*

Robinson informed both his trial counsel and the presiding judge of his mistreatment. *Id.* at 10-11. Robinson contends that shift supervisors at the jail were aware of the beatings but did not stop the beatings, report the incidents, or otherwise investigate. *Id.* at 12. Robinson alleges that some of the beatings were recorded by surveillance cameras within the jail, but Robinson is unsure if those recordings still exist. *Id.* at 14-15.

## II.

Defendants have now moved for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## III.

Robinson is currently representing himself as a pro se plaintiff. As the Sixth Circuit stated in *United States v. McKinney*, "[w]e do not require a pro se party to meet the same standards in the presentation of his argument as we apply to attorneys." 375 Fed. Appx. 479, 481 (6th Cir. 2010). As an incarcerated pro se plaintiff, the court must give Robinson an opportunity to offer supporting evidence, "however inartfully pleaded." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Defendant Genesee County argues that Robinson abandoned some of his claims by not addressing them in his response to Genesee County's motion for summary judgment. Def. Genesee County's Reply, ECF No. 131 at 1. However, Rule 56(e) of the Federal Rules of Civil Procedure grants a court discretion when one party has failed to address an assertion raised in a motion for summary judgment. Fed. R. Civ. P. 56(e). Due to plaintiff's status as a pro se plaintiff, his claims will be decided on the merits and will not be dismissed on this procedural basis. Defendants further argue that Robinson's responses should not be considered because they were filed late without adequate excuse. Def. Rainwater's Reply, ECF No. 133 at 1; Def. Genesee County's Reply, ECF No. 131 at 1; Def. Parks Reply, ECF No. 132 at 1. Robinson is incarcerated and has limited access to resources necessary for litigation. The court excuses the delay in his filings.

The summary judgment motions of each defendant will be discussed in turn.

## A.

Genesee County (the County) moves for summary judgment on the grounds that Robinson's claims are time-barred and that as a municipality, the County cannot be held liable under Robinson's Section 1983 claims nor his Michigan common law tort claims. Def. Genesee County's Mot. for Summ. J., ECF 113. For the following reasons, the County's motion for summary judgment will be granted.

## 1.

Genesee County argues that Robinson's Section 1983 claim should be dismissed because it is time-barred. Def. Genesee County's Mot. for Summ. J., ECF No. 113 at 14. Section 1983 does not specify a statute of limitations for its claims. _Owens v. Okure_, 488 U.S. 235, 239 (1989). Where federal law is silent, such as here, Section 1988(a) directs federal courts to borrow law from the forum state. 42 U.S.C. §1988(a). In the past though, this led to inconsistencies because federal courts sitting in the same state would borrow different state statutes of limitations for Section 1983 claims. Parties were uncertain as to which state statute of limitations would govern their Section 1983 claim since the courts would characterize each claim and determine which state statute of limitations was the most appropriate. _Wilson v. Garcia_, 471 U.S. 261, 266 (1985).

In response to this, the Supreme Court in _Wilson v. Garcia_ held that Section 1983 claims should be characterized as personal injury actions and that the applicable state personal injury laws would apply. _Id._ at 276. The Court anticipated that this would create more uniformity because within each state, every federal court deciding a Section 1983 claim would apply the same statute of limitations. _See id._ at 275.

However, the law still remained inconsistent within the states because many states had multiple statutes of limitations for personal injury actions. The Supreme Court clarified its approach in _Owens v. Okure_, 488 U.S. 235 (1989), where it held that if "state law provides multiple statutes of limitations for personal injury actions, courts considering §1983 claims should borrow the general or residual statute for personal injury actions." _Id._ at 249-50. Following _Wilson_ and _Owens,_ the Sixth Circuit adopted Michigan's personal injury three-year statute of limitations for claims brought pursuant to Section 1983. _Carroll v. Wilkerson_, 782 F.2d 44, 45 (6th Cir. 1986); _Goldsmith v. Sharrett_, 614 Fed.Appx. 824, 827 (6th Cir. 2015); _Chippewa Trading Co. v. Cox_, 365 F.3d 538, 543 (6th Cir. 2004); _Wolfe v. Perry_, 412 F.3d 707, 713 (6th Cir. 2005).

Michigan Compiled Law Service §600.5805 defines the statute of limitations for "[i]njuries to persons or property" and it is from this statute that the Sixth Circuit adopted the three year statute of limitations for Section 1983 claims. _Carroll_, 782 F.2d at 45. The County argues that instead of applying a three-year statute of limitations, the Court should apply the two-year statute of limitations found in Mich. Comp. Laws §600.5805(9).[2] The County reasons that Subsection (9) is the most appropriate law because it applies to claims against law enforcement officers. The County reasons that Subsection (9) is an outlier to the rest of the subsections within the statute because "it focuses on the _defendant_ or the _actor_ involved, not the underlying nature of the conduct." Def. Genesee County M. for Summ. J., ECF 113 at 9. The County argues that Subsection (9) should serve as the "residual" statute of limitations for Section 1983 actions against law enforcement officers. _Id; see Owens_ 488 U.S. at 250. It reasons that this interpretation of the law would not create the confusion that prompted _Wilson_ because there would be no difficulty in characterizing a Section 1983 claim against a law enforcement officer. Def. Genesee County M. for Summ.

J., ECF 113 at 9-10. If the claim involved a law enforcement officer, Subsection (9) would automatically apply and the statute of limitations would be two years. *See id.*

However, the County has not presented any case law or legislative history as to why Subsection (9) should be considered an exception to precedent. Adopting this interpretation would depart from Sixth Circuit precedent prescribing a three-year statute of limitations for Section 1983 claims. The relevant Sixth Circuit case law does not consider the status or characteristics of the parties in question when determining the appropriate statute of limitations. Instead, federal courts within Michigan are to apply a three-year statute of limitations when presented with a Section 1983 claim. Furthermore, creating a separate class of defendants under Mich. Comp. Laws §600.5805 would frustrate the intent of *Wilson. Wilson* 471 U.S. at 275. The Supreme Court intended to promote uniformity among federal courts within each state, not to create more categories for determining statutes of limitations. *Id.*

The County cites to *McCloskey* in which the court held that the "statute of limitations for any claim against an officer is two years." *McCloskey v. City of Pontiac,* No. 05-73936, 2007 WL 325341 (E.D. Mich. Jan. 31, 2007). However, the County has taken this quote out of context. The plaintiff in the cited case had brought both state law claims and a Section 1983 claim against police officers. The court applied Michigan's two-year statute of limitations law for the state law claims, but applied the three-year statute of limitations statute for the Section 1983 claim. The court specifically stated "Defendants fail to recognize or acknowledge that the Sixth Circuit, following Supreme Court case law, has abandoned the practice of finding the `most appropriate' state statute of limitations for 1983 claims in favor of a more certain standard." *Id.* at 9.

The County goes on to argue that regardless of whether law enforcement officers should be considered a different class of persons, the two-year statute of limitations in Subsection (9) should be adopted to promote federalism. *Id.* at 10. The County essentially argues that the most appropriate standard in this case would be the approach used prior to *Wilson* and the one articulated in the dissents of *Wilson.* Def. Genesee County Mot. for Summ. J., ECF 113 at 11. The County emphasizes that federal courts should rely upon states to set their own statutes of limitations. *Id.* However, the Court *is* relying upon Michigan's statute of limitations by adopting its three year personal injury statute of limitations. Most importantly, adopting a three year statute of limitations complies with well-established Sixth Circuit precedent.

It is possible that Robinson's claims about mistreatment prior to October 30, 2013 may still be brought. Robinson claims that he was abused on multiple occasions during his incarceration at Genesee County Jail. Am. Compl., ECF No. 56. Under the doctrine of continuing violation, a statute of limitations will not bar a claim when the violation has occurred over a period of time, even when some of the violation occurred prior to the expiration of the statute of limitations. *Sharpe v. Cureton*, 319 F.3d 259, 267 (2003). To meet this standard, the plaintiff must prove that: (1) defendant's wrongful conduct continued after the precipitating event that began the pattern; (2) injury to the plaintiff must continue to accrue after that event; (3) further injury to the plaintiff must have been avoidable if the defendants had at any time ceased their wrongful conduct. *Tolbert v. Ohio DOT*, 172 F.3d 934, 940 (6th Cir. 1999). In addition, there are two categories of violations: (1) those alleging serial violations and (2) those identified with a longstanding and demonstrable policy of discrimination. *Sharpe*, 319 F.3d at 266. Robinson's claims would presumably fall under the first category of alleging serial violations.

However, the Sixth Circuit rarely extends the continuing violation doctrine to Section 1983 actions. *Id.* at 267 ("This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to §1983 actions"); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, n. 3 (6th Cir.

1995) ("Courts have been extremely reluctant to apply this [continuing violation] doctrine outside of the context of Title VII."). This creates a high bar for Robinson to prove that the incidents prior to October 30, 2013 constituted a continuing violation. In *Goldsmith v. Sharrett*, the Supreme Court distinguished a continuing violation from discrete events. "Continuing violations in the Section 1983 context are akin to hostile-work environment claims where the harm `cannot be said to occur on any particular day' and individual incidents are not actionable on their own." *Goldsmith v. Sharrett*, 614 Fed. Appx. 824, 828-829 (6th Cir. 2015) quoting *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 114 (2002). When the alleged "continuing violation" consists of actions that are actionable on their own, they do not qualify in the aggregate as a continuing violation.

Robinson alleges that, during his incarceration, "he was assaulted, with varying degrees of severity, by [Genesee County Jail] guards 3-4 times per week" and repeatedly placed in solitary confinement. Am. Compl., ECF No. 56. at 4-5. Each of these assaults would be actionable on their own. Indeed, the only incident that falls within the statute of limitations is actionable on its own, the assault on October 30, 2013. Since the rest of the incidents predating the statute of limitations were discrete actions, they do not qualify in the aggregate as a continuing violation and are thus time-barred.

Ultimately, the statute of limitations for Robinson's §1983 claim is three years. As discussed above, the Sixth Circuit has adopted a three year statute of limitations for §1983 claims. *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). Since Robinson filed his complaint on October 26, 2016, the only incident that falls within this time frame is the alleged assault by Defendant Rainwater on October 30, 2013. Am. Compl., ECF No. 56. at 12; Def. Genesee County's Mot. for Summ. J., ECF 113.3 at 271-272. This is the only incident for which the County could potentially be found liable.

The statute of limitations is different for Robinson's Michigan common law claims of assault and battery and intentional infliction of emotional distress. As held in *McCloskey*,

> Michigan statutory law pertaining to the statute of limitations associated with assault and battery claims and causes of action against law enforcement officers arising out of their misconduct is clear and unequivocal. The statute of limitations for any claim against an officer is two years.

*McCloskey v. City of Pontiac,* No. 05-73936, 2007 WL 325341 (E.D. Mich. Jan. 31, 2007) (holding that the statute of limitations for plaintiff's Michigan common law assault and battery claims was two years, but that the statute of limitations for plaintiff's Section 1983 claims was three years). According to Robinson, the last alleged incident occurred on October 30, 2013 and Robinson filed his complaint on October 26, 2016. Am. Compl., ECF No. 56 at 12. This exceeds two years and thus is time-barred.

## 2.

This leaves only Robinson's Section 1983 claim to be resolved. Though it is not timebarred, it cannot succeed because the County is a municipality. This shields the County from liability under Robinson's Section 1983 claims and his Michigan common-law tort claims.

To find a municipality liable under a Section 1983 claim, it must be examined under a two pronged inquiry. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). First, whether the plaintiff has asserted the deprivation of a constitutional right. *Id*. Second, whether the county is responsible for that violation. *Id*. For liability to attach, both requirements must be met. *Id*. For purposes of surviving summary judgment, Plaintiff

has fulfilled the first requirement by claiming that the County violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments. Pl.'s Second Am. Compl., ECF No. 56 at 16.

This leaves the second requirement to consider. A plaintiff may not recover against a municipality on a Section 1983 claim on a theory of respondeat superior. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, if a party wishes to hold a municipality liable, it must prove that municipality officials adopted a policy or custom that violated the plaintiff's constitutional rights. *Id.* at 690-691. The custom does not have to be approved through official channels. *Id.* at 691. Rather, it should be considered a legal institution that is "so permanent and well settled as to constitute a `custom or usage' with the force of law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Monell*, 436 U.S. at 691). However, proving alone that a custom existed is not enough to find a municipality liable. The plaintiff must also demonstrate that "through its *deliberate* conduct, the municipality was the `moving force' behind the injury alleged." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "It must reflect a course of action deliberately chosen from among various alternatives." *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996).

The Sixth Circuit has identified four ways in which a plaintiff may demonstrate that a municipality's custom or usage is illegal. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). They are:

> (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Id.* The County correctly states that Robinson's allegations fall under the fourth category because in his second amended complaint, Robinson claims that the County administration and staff "tolerated, condoned and/or encouraged the abuse of Plaintiff." Pl.'s Second Am. Compl., ECF No. 56 at 16; Def. Genesee County's Mot. for Summ. J., ECF 113 at 16. To succeed on a claim of inaction under the fourth category, the plaintiff must show deliberate indifference on the part of the defendant. *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996). It must amount to more than a collection of "sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference." *Id.* The plaintiff must demonstrate that the municipality had a pattern of inadequately investigating similar claims. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

A survey of Robinson's evidence indicates that he has presented insufficient evidence to raise a triable issue of fact as to whether the County adopted a policy or custom of physically assaulting him. He claims that the jail administration and staff "tolerated, condoned and/or encouraged the abuse of Plaintiff," but there is no evidence supporting his allegation. Pl.'s Second Am. Compl., ECF No. 56 at 16. Robinson sets forth similar allegations in a letter he presented at his criminal trial, but this letter was never authenticated or entered into evidence. Pl.'s Resp. to Def. Genesee County's M. for Summ. J., ECF 130, Ex. A. Robinson's attorney read the letter, but refused to sign it. *Id.,* Ex. B. The judge at the proceeding declined to even read the letter. *Id.* The same is true for the letter written by his sister, Alisha Robinson. *Id.,* Ex. D. Though it alleges that Robinson was being assaulted, the letter is not notarized and thus cannot be considered as evidence.

*Id.*

Robinson's journal entries cannot be admitted because they are hearsay. Fed. R. Evid. 801(c). He is offering the entries to prove the truth of the matter asserted (that he was abused by deputies). Pl.'s Resp. to Def. Genesee County's M. for Summ. J., ECF 130, Ex. C.

Robinson includes a news clipping describing a lawsuit against Deputy Parks for assaulting an inmate. *Id.,* Ex. E. This evidence does more to hurt Robinson's claim than to help it because it demonstrates that the County disciplined Parks when it learned of his misconduct. It tends to show that the County in fact did *not* have a pattern of inadequately investigating claims and thus, does not constitute a custom or policy of assaulting Robinson. The incident report (Exhibit F) similarly weakens Robinson's claim. *Id.,* Ex. F. The report documents an incident between Robinson and county deputies in which Robinson allegedly lunged preemptively at the officers. *Id.* The officers used physical force and OC spray to subdue Robinson before taking him to the Restricted Housing Unit. This report indicates that the physical force used against Robinson in this instance was not malicious or vengeful, but rather necessary in order to restrain him. It does not demonstrate a custom or policy of physical abuse of Robinson. To the contrary, it indicates that the county jail has a system in place for reporting the use of physical force against inmates.

The presentence investigation report does not supply any evidence of a custom or policy of physical assaults against Robinson. *Id.,* Ex. G. Rather, it is Robinson's musings on life and his outlook in prison. Similarly, the court transcript in Exhibit H provides no evidence of physical abuse by the County. *Id,* Ex. H. The excerpt provides insufficient context to determine why Robinson claims he was improperly placed in the Restrictive Housing Unit.

*Monell* sets a high bar for plaintiffs wishing to bring a Section 1983 claim against a municipality and it will rarely survive a summary judgment motion. *Hanson v. Madison County Detention Center, et al.,* 2018 WL 2324252 (6th Cir. 2018). The municipality must be engaging in a custom that harms plaintiff's rights and do so in a deliberate fashion. Robinson has not presented sufficient evidence to create a material issue of fact as to whether the County had a custom or policy of physically assaulting Robinson.

In response to Robinson's Michigan tort law claims, the County argues that it cannot be found liable for assault and battery and intentional infliction of emotional distress. As discussed above, Robinson's Michigan tort law claims are time-barred. *See* Section III.A.1. However, even if the claims were not time-barred, the County correctly asserts that it cannot be found liable under these claims because it is granted immunity as a governmental agency. Def. Genesee County's Mot. for Summ. J., ECF No. 113 at 24. Under Michigan law, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws §691.1407(1). A governmental function is defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." Mich. Comp. Laws §691.1401(b). The Supreme Court of Michigan has held that the operation of a county jail is a governmental function for purposes of Mich. Comp. Laws §691.1407. <u>Lockaby v. Wayne County</u>, 276 N.W.2d 1, 14-15 (1979). Furthermore, a governmental agency cannot be held vicariously liable for the intentional torts of its employees.

The County cannot be found liable for the actions of employees of Genesee County Jail because the operation of the jail is a governmental function. Employing deputies to guard and supervise inmates is part of the operation of the jail and thus the County is still within the scope of its immunity. Furthermore, even if Defendants Rainwater and Parks engaged in tortious behavior, the County could not be found liable because the alleged behavior constitutes an intentional tort.

Robinson's claims against the County will be dismissed. Since the case will consequently not be tried, the Court will deny as moot the County's motion to preclude testimony.

## B.

Defendant Rainwater moves for summary judgment on the grounds that Robinson's suit is time-barred and that Robinson has not presented adequate evidence to demonstrate an issue of material fact. Def. Rainwater's Mot. for Summ. J., ECF 112. For the following reasons, Rainwater's motion for summary judgment will be granted.

## 1.

Similar to the County, Rainwater contends that Robinson's claims are time-barred by Mich. Comp. Law 600.5805(9) which sets the statute of limitations at two years for actions against law enforcement officers. As discussed above, the two year statute of limitations for law enforcement officers does not apply to Robinson's Section 1983 claims. *See* Section III.A.1. Consistent with 6th Circuit precedent, a three year statute of limitations applies to Robinson's Section 1983 claims. *Id.* However, the two year statute of limitations does apply to Robinson's Michigan common law claims of assault and battery and intentional infliction of emotional distress. *See* Section III.A.1. These state common law claims are time-barred because Robinson filed his claim more than two years after the last alleged incident.

## 2.

This leaves only Robinson's Section 1983 claims to be resolved. Robinson claims that Rainwater "participated in the repeated beatings and assault of Plaintiff . . . over a period of two and a half years." *Id.* at 2. The last alleged incident occurred on October 30, 2013 and is the only incident within the three year statute of limitations of Robinson's Section 1983 claim. *Id.* at 12. Though Robinson claims that this was only the last of a long series of assaults, as discussed above, he cannot succeed on a claim under the doctrine of continuing violation. Section III.A.1. Thus, the only actionable incident is this final incident with Robinson on October 30, 2013.

As to this alleged incident, there is no material issue of fact as to whether it occurred. Rainwater presented the jail's shift log for October 30, 2013 showing that he was not on duty the morning Robinson alleges Rainwater assaulted him. Def. Rainwater's Mot. for Summ. J., ECF No. 112-6. This shift log is not dispositive, but it indicates that Rainwater was not present at the jail at the time of the alleged incident. Robinson has not presented any evidence that Rainwater was present at that time. He only alleges that Rainwater assaulted him that morning in the jail. Am. Compl., ECF No. 56 at 12. He also mentions that sometimes guards arrive at the prison before their shift to use the gym. Pl.'s Resp. to Def. Rainwater's Mot. for Summ. J., ECF No. 129 at 5. However, he has presented no evidence that Rainwater arrived prior to his shift that day to use the gym or for any other purpose.

Robinson alleges that two eye witnesses, Quadrell Marquon Montgomery and D'Angelo Evans, can corroborate Robinson's claims that Rainwater assaulted him. Pl.'s Resp. to Def. Rainwater's Mot. for Summ. J., ECF 129 at 4. However, Robinson has provided no affidavits nor depositions from either of these individuals and thus they cannot be considered as evidence. Robinson also claims that Steven Banks, a former employee of Genesee County Sheriff's Office, can attest to the fact that the jail mistreated Robinson. However, Robinson has provided no affidavits nor depositions from Mr. Banks and this allegation alone cannot create an issue of material fact.

Rainwater presents the expert opinion of Dr. Steven R. Buchman, a craniofacial specialist. Def. Rainwater's Mot. for Summ. J., ECF. 112-4. For an expert opinion submitted at the summary judgment phase, the

opinion must be more than "a conclusory assertion about the ultimate legal issues." _Brainard v. Am. Skandia Life Assur. Corp._, 432 F.3d 655, 663-664 (6th Cir. 2005). It must set forth facts and a logical line of reasoning. *Id.* Dr. Buchman analyzed a photograph of Robinson that was taken a few hours after the alleged assault by Rainwater. Def. Rainwater's Mot. for Summ. J., ECF. 112-4. Dr. Buchman stated in an affidavit that "[t]here is no suggestion or indication that the subject of the photo incurred a punch to the right side of his face two or more hours prior to the photo being taken." *Id.*

Dr. Buchman's findings are compelling and Robinson presents no evidence calling them into question. Robinson refers to "a lot of experts on the internet" who state that it is normal for bruising to not appear until the next day for those who are African American. Pl.'s Resp. to Def. Rainwater's Mot. for Summ. J., ECF 129 at 3. For purposes of Robinson's argument, these internet sources must be considered expert witnesses. However, these internet sources do not qualify as expert witnesses under Rule 702 of the Federal Rules of Evidence and thus cannot be considered. Fed. R. Evid. 702; *Portwood v. Montgomery County,* 2014 U.S. Dist. LEXIS 168620, 19 (M.D. Tenn. 2014) (stating that an expert opinion offered at the summary judgment stage is held to the same standard as Rule 702 of the Federal Rules of Evidence).

Contrary to Rainwater's argument, Robinson's statement to a nurse at the MDOC facility does not prove that the October 30, 2013 assault did not occur. Robinson told the nurse, "I was assaulted in the county jail 2 years ago and since then I have been having headaches ever since then." Def. Rainwater's Mot. for Summ. J., ECF No. 112-8. He stated that the assault occurred two years prior, but did not mention the alleged assault that happened a little over a month prior. Robinson has filed an affidavit clarifying that in the statement he was referring to the first assault. His statement to the nurse cannot be construed as definitively excluding the possibility that subsequent assaults occurred. Though a party "may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made," this is only applicable when the affidavit contradicts the party's earlier deposition testimony. _Reid v. Sears, Roebuck & Co._, 790 F.2d 453, 460 (6th Cir. 1986). In a deposition, Robinson stated that he was truthful with the MDOC staff, which would presumably include his statement to the nurse. However, Robinson's subsequent affidavit does not contradict his prior statement to the nurse. Rather, the affidavit clarifies the prior statement.

Regardless of the meaning of Robinson's statement to the nurse, Rainwater has presented sufficient evidence to succeed on his motion for summary judgment. Robinson has not demonstrated that a material issue of fact exists for his claims. Rainwater's motion for summary judgment will be granted.

## C.

Defendant Parks moves for summary judgment on the grounds that Robinson's suit is timebarred since none of the alleged misconduct by Parks occurred within the three year statute of limitations. Def. Parks' Mot. for Summ. J., ECF 91 at 6. In both a deposition and his response, Robinson states that Parks participated in multiple assaults against him prior to October 26, 2013. Def. Parks' Mot. for Summ. J., ECF 91-2; Pl.'s Resp. to Def. Parks' Mot. for Summ. J. ECF 128 at 2. These incidents fall beyond the three year statute of limitations for Section 1983 claims and well beyond the two year statute of limitations for Michigan common law tort claims against a law enforcement officer.

Robinson alleges that regardless of this, Parks was aware of the abuse when Rainwater assaulted him on October 30, 2013. *Id.* Though not articulated as such, Robinson is essentially claiming that Parks is liable for Rainwater's assault under a theory of respondeat superior. However, a Section 1983 claim must be

based on more than a theory of respondeat superior. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Instead,

> a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor `either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'

*Id.* quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Robinson alleges that Parks failed to inform his superiors of prior assaults against Robinson and even personally participated in some of the attacks. Pl.'s Resp. to Def. Parks' Mot. for Summ. J. ECF 128 at 2. However, these prior incidents fall outside of the statute of limitations. It is possible that Parks could still be found liable for encouraging, implicitly authorizing, or knowingly acquiescing to Rainwater's assault against Robinson on October 30, 2013. However, Robinson has not presented evidence creating a material issue of fact. He presents his allegations alone without supporting evidence as to the culpability of Parks.

## D.

Robinson filed a response to Defendants' reply without first receiving leave from the Court to do so. ECF No. 136. Under the Local Rules, the court may strike such a response. L.R. 7.1(c); L.R. Comment ("Attempts to circumvent the LR in any way may be considered an abusive practice which may result in the motion or response being stricken as well as sanctions being imposed under LR 11.1."). Robinson is owed some amount of leniency as a pro se plaintiff so his response will be considered. Even with Robinson's additional arguments, Defendants' motions for summary judgment will be granted.

Robinson claims that he attempted to notify others of the abuse he received at Genesee County Jail. ECF No. 136 at 2. He references a proceeding in criminal court in which his attorney asks for a change of venue because Robinson fears that he will not receive a fair trial. *Id.*, Ex. 9. Contrary to Robinson's allegations, no mention is made of Robinson's abuse at the county jail. *Id.* Instead, the proceeding is only concerned with the issue of whether Robinson will receive a fair trial in Genesee County. The change of venue request was not presented as a solution to the alleged abuse at the jail. *Id.* The closest indication that the request was due to a legitimate concern about abuse is from another court proceeding. *Id.*, Ex. 11. Mr. Skinner, Robinson's then attorney, stated "My expectation is — (sic) client on direct is going to testify that he was beat up by sheriff's deputies at the jail and that's one of the reasons he filed a motion for change and venue." This is only an expectation that Mr. Skinner is expressing. Plaintiff has presented no evidence that on direct examination, he alleged that he was facing abuse at the jail. Even if he were to present such evidence, the related claims would be time-barred.

Robinson presents excerpts of depositions from various individuals stating that they witnessed deputies abusing Robinson. *Id.*, Exs. 2, 6, 10, and 15. None of the witnesses claim to have seen Defendant Rainwater attack Robinson on October 30, 2013. Instead, they all speak of isolated incidents that occurred prior to this time. As discussed above, the statute of limitations has passed for any prior incidents and any associated claims are time-barred.

## E.

In Robinson's response to Defendants' Motion to Strike, Robinson stipulated to dismissal of his conspiracy claim. Pl.'s Resp. to Defs.' Mot. to Strike, ECF 59 at 1. For this reason, the conspiracy claim will not be considered.

Defendants have provided sufficient evidence to succeed in their motions for summary judgment. For this reason, the veracity of Edward Burley's testimony will not be considered.

## IV.

Accordingly, it is ORDERED that Defendants' motions for summary judgment, ECF Nos. 91, 112, and 113, are GRANTED.

It is further ORDERED that Defendant Genesee County's motion to preclude testimony, ECF No. 104, is DENIED as moot.

It is further ORDERED that Robinson's motion for reconsideration of appointment of counsel, ECF No. 135, is DENIED.

It is further ORDERED that Counts One, Two, Three, and Four of Plaintiff Robinson's second amended complaint, ECF No. 56, is DISMISSED.

[1] There is some discrepancy in the record as to the date of this last assault. In his second amended complaint, Robinson claims that it occurred on October 28, 2013. Am. Compl., ECF No. 56. at 12. However, in one of Robinson's depositions, he claims that it occurred October 30, 2013. Def Genesee County's Mot. for Summ. J., ECF 113.3 at 271-272. Robinson seemingly adopts October 30, 2013 as the date of the incident in his later responses to Defendants' motions for summary judgment. Resp. to Def. Rainwater's Mot. for Summ. J., ECF 129 at 1; Resp. to Def. Genesee County's Mot. for Summ. J., ECF 130 at 4. The Court will consider October 30, 2013 the date of the incident since Robinson adopts this date in his deposition and later filings and neither party disputes the discrepancy.

[2] In its motion for summary judgment, Genesee County cites to Mich. Comp. Laws §600.5805(7). However, this subsection makes no mention of law enforcement officers or sheriffs. Instead, this language is found in Mich. Comp. Laws §600.5805(9).

Save trees - read court opinions online on Google Scholar.

Exhibit 2

**PROGRESSIVE MARATHON INSURANCE, Plaintiff,**

**v.**

**BLUE CROSS BLUE SHIELD OF MICHIGAN, Defendant.**

<u>Case No. 16-10559.</u>

**United States District Court, E.D. Michigan, Southern Division.**

November 22, 2016.

Progressive Marathon Insurance Company, Plaintiff, represented by Daniel E. Best, Weltman, Weinberg.

Progressive Marathon Insurance Company, Plaintiff, represented by Tiffani Williams, Christopher Trainor and Associates.

Blue Cross Blue Shield of Michigan, Defendant, represented by Jesse A. Zapczynski, Blue Cross Blue Shield of Michigan.

# OPINION AND ORDER DISMISSING PLAINTIFF'S CLAIMS WITHOUT PREJUDICE [11]

NANCY G. EDMUNDS, District Judge.

Defendant moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims with prejudice. Defendant argues that Plaintiff has not established standing to bring this lawsuit, which is an ERISA enforcement action. For the reasons stated below, the Court GRANTS Defendant's motion to dismiss Plaintiff's claims but does so WITHOUT PREJUDICE.

## I. Background

According to the Complaint, Thomas Prokuda sustained injuries in an automobile accident, and Plaintiff, Prokuda's no-fault automobile insurer, paid his medical bills. (Dkt. 1-1.) Plaintiff then brought an action in state court seeking reimbursement from Defendant, the administrator of Prokuda's employer-sponsored health plan. (*Id.*) Plaintiff asserted two claims against Defendant: (1) recoupment under Michigan state law; and (2) unjust enrichment. (*Id.*)

Both of Plaintiff's claims require determining whether Prokuda is entitled to benefits under Defendant's plan. (*See id.*) That plan is an Employee Retirement Income Security Act (ERISA) Plan (Dkt. 11-1), so Defendant properly removed the case to this Court. (*See* Dkt. 4-7.) Defendant now moves to dismiss Plaintiff's Complaint on the ground that Plaintiff has not established standing to pursue ERISA claims.

## II. Standard

When facing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court construes the complaint in the light most favorable to the non-moving party and accepts all factual allegations as true. *Bell Atl. Corp. v.*

_Twombly,_ 550 U.S. 544 (2007). The non-moving party will overcome the motion to dismiss only if its complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." _Id._ In deciding the motion, the Court may only consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the Court may take judicial notice. _Currier v. First Resolution Inv. Corp.,_ 762 F.3d 529, 533 (6th Cir. 2014).

# III. Analysis

Defendant argues that Plaintiff cannot state a claim for relief because it has not established standing to pursue ERISA claims. The Court agrees. Only the following parties may bring an ERISA claim for benefits: participants, beneficiaries, assignees, and possibly contractual subrogees.[1] _Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield of Mich.,_ 2016 WL 3924243, at *3 (6th Cir. July 21, 2016) (internal citations omitted). Plaintiff's Complaint does not allege that Plaintiff falls within any of these categories. Therefore, Plaintiff has not established standing to pursue these claims.

Furthermore, even if Plaintiff had alleged standing, Plaintiff has not satisfied ERISA's requirement of administrative exhaustion. In the Sixth Circuit, "it is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim." _Hill v. Blue Cross and Blue Shield of Mich.,_ 409 F.3d 710, 717 (6th Cir. 2005) (internal citations omitted). And the administrative exhaustion requirement extends to assignees of participants and beneficiaries. _Prudential Property and Cas. Ins. v. Delfield Co. Group Health Plan,_ 187 F.3d 637 (Table), 1999 WL 617992, at *3 (6th Cir. 1999). However, an exception to the requirement applies "when the remedy obtainable through administrative remedies would be inadequate or the denial of the beneficiary's claim is so certain as to make exhaustion futile." _Hill,_ 409 F.3d at 719 (internal citations omitted).

The ERISA plan at issue creates an administrative scheme for resolving disputes (_see_ Dkt. 11-1, at 92-93), but Plaintiff has failed to allege either that it exhausted administrative remedies or that resort to administrative procedures would be futile. The Complaint alleges only: "As a result of Progressive's payment in the amount of $33,862.31, Progressive accrued a right of recoupment against this Defendant. Defendant was put on notice of the accident and Progressive's demand for recoupment has been refused by the Defendant." (Dkt. 1-1, at 4-5.) Therefore, Plaintiff's failure to allege either administrative exhaustion or futility provides another ground for dismissing the Complaint.

# IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, but Plaintiff's claims are dismissed WITHOUT PREJUDICE.

SO ORDERED.

[1] The language quoted in Plaintiff's brief to support the argument that Plaintiff gained standing by paying Prokuda's medical bills does not stand for the proposition Plaintiff suggests. (_See_ Dkt. 13, at 3.) Plaintiff implies that the quote reflects part of the Sixth Circuit's holding in _Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield of Mich.,_ 2016 WL 3924243 (6th Cir. 2016). However, the quoted statement was only summarizing the lower court's analysis. _See Farm Bureau Gen. Ins. Co. of Mich.,_ 2016 WL 3924243, at *5 ("The [district] court assumed that _if_ Farm Bureau had paid for Van Camp's medical bills, Farm Bureau could then bring a claim under [ERISA].") (emphasis in original). Therefore, the Court believes Plaintiff has either misstated or misapprehended the law.

Save trees - read court opinions online on Google Scholar.

Exhibit 1

**EDWARD J. HOLLAND, JR., Plaintiff,**

**v.**

**UNITED STATES OF AMERICA, Defendant.**

<u>Case No. 17-13926.</u>

**United States District Court, E.D. Michigan, Southern Division.**

March 7, 2019.

Edward Holland, Jr, Plaintiff, represented by Neal Nusholtz.

United States of America, Defendant, represented by Edward J. Murphy, U.S. Department of Justice Tax Division.

# OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

MARIANNE O. BATTANI, District Judge.

## I. INTRODUCTION

In a prior suit commenced in this Court by the United States of America, it was determined that Edward J. Holland, Jr. ("Holland") had incurred nearly $20 million in federal income tax liability over several tax years spanning from 1991 to 2012. *See United States v. Holland,* Case No. 13-10082, Dkt. 318-1, Stipulation for Agreed Judgment of Tax Liability. In an effort to collect this tax liability, the Internal Revenue Service ("IRS") issued a levy to the Social Security Administration ("SSA") in 2012, and since that time, the IRS has received one hundred percent of Holland's monthly social security benefits and applied these payments toward his tax debts.

Plaintiff Holland brought the present suit on December 6, 2017, seeking an order that would preclude the Defendant United States of America from taking more than 15 percent of his monthly social security benefits going forward. In support of this requested relief, Holland characterizes the IRS's levy on his social security benefits as a "continuing" levy that is subject to the 15-percent limit set forth in 26 U.S.C. § 6331(h)(1). Defendant, in contrast, argues that the 2012 levy issued by the IRS to the SSA is a one-time levy authorized under 26 U.S.C. § 6331(a) that is not subject to a 15-percent limit.

Through a motion filed on February 6, 2018, Defendant seeks the dismissal of this action as barred by the federal Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a). The AIA prohibits suits "for the purpose of restraining the assessment or collection of any tax," 26 U.S.C. § 7421(a), subject to certain statutory and judicially recognized exceptions, and Defendant contends that no such exception applies here. In response, Holland appeals to each of the two judicially recognized exceptions to the AIA, under which a tax collection effort may be enjoined if (i) it is clear that the Government cannot prevail on the merits of its tax collection effort, or (ii) Congress has not provided the plaintiff an alternative avenue for challenging the validity of a tax.

On April 12, 2018, the Court heard oral argument on Defendant's motion to dismiss. At the conclusion of this hearing, counsel for the parties requested that the Court hold its ruling in abeyance while the parties sought to resolve this and related litigation, but there is no indication that these settlement efforts have succeeded. Rather, in a motion filed on November 21, 2018, Holland seeks leave to amend his complaint in order to address certain of the challenges raised in Defendant's motion.[1]

The Court now is prepared to rule on the parties' motions. For the reasons set forth below, the Court GRANTS Defendant's motion to dismiss and DENIES Plaintiff's motion for leave to amend his complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Although Plaintiff Edward J. Holland, Jr. ("Holland") has a lengthy history of alleged failures to meet his federal tax obligations, the pertinent facts bearing upon the present motions are straightforward and largely undisputed. As both parties agree — and, in fact, have stipulated in a related case pending before this Court — Holland owes nearly $20 million in federal tax liabilities, and he states in his complaint that he is not presently seeking "a refund of taxes collected or . . . damages for taxes erroneously collected." (Dkt. 1, Mandamus Petition at ¶ 1.)[2] Instead, he seeks to enjoin the Defendant United States of America from continuing to employ one particular means of collecting his outstanding tax liabilities — namely, through a levy of one hundred percent of Holland's monthly social security benefits.

According to Holland's complaint, this challenged collection effort began in 2012, when the Internal Revenue Service ("IRS") issued a levy to the Social Security Administration ("SSA") calling for the full amount of Holland's monthly social security benefits to be applied toward his federal tax liabilities. Holland alleges that this levy has caused an economic hardship and left him "penniless," given that he is 78 years old and his social security benefits are his only source of income. (*Id.* at ¶ 2(a).) Nonetheless, Defendant has declined to release the levy on Holland's social security benefits, nor has it offered Holland a payment plan that would allow him to retain a portion of these benefits.

Accordingly, Holland brought this action — styled as a petition for a writ of mandamus — on December 6, 2017, seeking to limit Defendant's collection effort to no more than 15 percent of his monthly social security benefits. In support of this proposed 15-percent limit, Holland points to a provision in the Internal Revenue Code that authorizes "[c]ontinuing lev[ies]" on certain "specified payments" of "up to 15 percent" of the payment. 26 U.S.C. § 6331(h)(1). Through its present motion, however, Defendant argues that this case must be dismissed as an attempt to enjoin the collection of taxes in violation of the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a).

In the wake of an April 12, 2018 hearing on Defendant's motion to dismiss, Holland has sought to amend his complaint in order to address two alleged deficiencies that Defendant identified in its motion. First, Holland proposes to name the Acting Commissioner of Social Security as an additional defendant in this action, in light of Defendant's contention that the mandamus relief sought in Holland's initial complaint is available only against federal officers, and not the United States itself. Next, to the extent that Defendant argues that Holland's initial complaint is subject to dismissal due to the availability of an alternative remedy — namely, a claim for damages under 26 U.S.C. § 7433(a) — that precludes mandamus relief and defeats a possible exception to the AIA, Holland requests leave to assert such a claim in his amended complaint.

## III. STANDARD OF REVIEW

## A. Defendant's Motion to Dismiss

Through its present motion, Defendant seeks the dismissal of this action under either Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 12(b)(6). In support of its appeal to Rule 12(b)(1), Defendant points to language in Supreme Court and Sixth Circuit decisions indicating that the AIA erects a jurisdictional bar to actions to enjoin the collection of taxes. *See* Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 5, 82 S. Ct. 1125, 1128 (1962) (explaining that the AIA operates to "withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes"); RYO Machine, LLC v. United States Department of Treasury, 696 F.3d 467, 470 (6th Cir. 2012) (characterizing the AIA as depriving the courts of "jurisdiction over a suit to preemptively challenge a tax"). On the other hand, the Sixth Circuit has more recently recognized a "growing debate" as to whether the prohibition set forth in the AIA is truly jurisdictional in nature, or whether a challenge based on this statute instead should be raised in a Rule 12(b)(6) motion. Morris v. United States, No. 12-4532, 540 F. App'x 477, 479-80 (6th Cir. Aug. 23, 2013).

In any event, Defendant correctly observes that regardless of the jurisdictional nature of the AIA's prohibition, the analysis of the present motion would be the same. In addressing a motion brought under Fed. R. Civ. P. 12(b)(1) that mounts a facial challenge to the existence of subject matter jurisdiction, the Court "takes the allegations in the complaint as true," inquiring whether these allegations establish a basis for the exercise of subject matter jurisdiction. Gentek Building Products, Inc. v. Steel Peel Litigation Trust, 491 F.3d 320, 330 (6th Cir. 2007).[3] Yet, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to withstand a properly supported Rule 12(b)(1) motion to dismiss. O'Bryan v. Holy See, 556 F.3d 361, 376 (6th Cir. 2009) (internal quotation marks and citation omitted).

Similarly, if Defendant's motion is treated as brought under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to Holland and accept all well-pleaded factual allegations as true, *see* League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007), and then must ask whether these facts "state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). As the Supreme Court has emphasized, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974.

## B. Holland's Motion for Leave to Amend His Complaint

In the second of the two pending motions in this case, Plaintiff Holland seeks leave of the Court to amend his complaint.[4] Under the Federal Rule governing this motion, the Court is directed to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, the Court "need not grant leave to amend . . . where amendment would be futile." Miller v. Calhoun County, 408 F.3d 803, 817 (6th Cir. 2005) (internal

quotation marks and citation omitted). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller*, 408 F.3d at 817.

# IV. ANALYSIS

## A. Holland Has Not Established an Exception to the Anti-Injunction Act That Would Permit Him to Pursue His Claim for Mandamus Relief.

## 1. Applicable Law

In seeking the dismissal of Holland's claim for mandamus relief, Defendant appeals principally to the federal Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a). This statute generally prohibits any "suit for the purpose of restraining the assessment or collection of any tax," 26 U.S.C. § 7421(a), subject to certain specified exceptions. The Supreme Court has explained that "[t]he manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs*, 370 U.S. at 7, 82 S. Ct. at 1129. Similarly, the Sixth Circuit has observed that "[t]he AIA has been interpreted broadly to encompass almost all premature interference with the assessment or collection of any federal tax." *RYO Machine*, 696 F.3d at 471.

Although the AIA itself specifies certain exceptions to its general rule, the parties agree that these statutory exceptions do not apply here. Instead, Holland seeks to invoke each of the two judicially recognized exceptions to the AIA's usual prohibition against suits to restrain the collection of taxes. First, in *Enochs*, 370 U.S. at 7, 82 S. Ct. at 1129, the Supreme Court held that "if it is clear that under no circumstances could the Government ultimately prevail" in its tax collection effort, "the central purpose of the [AIA] is inapplicable and . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists." The Court explained that "the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of the suit," and that "[o]nly if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained." *Enochs*, 370 U.S. at 7, 82 S. Ct. at 1129. More recently, the Court has described this exception to the AIA as available only when the challenged collection effort "is plainly without a legal basis," such that the plaintiff can show a "certainty of success on the merits." *Bob Jones University v. Simon*, 416 U.S. 725, 737, 745, 94 S. Ct. 2038, 2046, 2050 (1974); *see also RYO Machine*, 696 F.3d at 473 (holding that this exception was not applicable because the challenged government ruling rested on an "interpretation of the [Internal Revenue] Code [that] is plausible on its face"); *Tatar v. Mayer*, No. 12-14814, 2013 WL 4777143, at *2 (E.D. Mich. Aug. 6, 2013) (finding that the plaintiff could not invoke this exception where "the United States has offered a viable basis for the challenged conduct").

Next, the Supreme Court has found that "Congress did not intend the [AIA] to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." *South Carolina v. Regan*, 465 U.S. 367, 378, 104 S. Ct. 1107, 1114 (1984) (footnote omitted). The Sixth Circuit has emphasized that "this exception is very narrow," *RYO Machine*, 696 F.3d at 472, and has suggested in one case that it applies

only "where Congress has provided no alternative method of challenging the constitutionality of a federal tax," _Dominion National Bank v. Olsen_, 771 F.2d 108, 116 (6th Cir. 1985). Similarly, another court has reasoned that this exception should be construed "very narrowly," in light of the "sympathetic, almost unique, facts" addressed by the Supreme Court in _Regan. Judicial Watch, Inc. v. Rossotti_, 317 F.3d 401, 408 n.3 (4th Cir. 2003). Moreover, the Supreme Court has explained that "[a] taxpayer cannot render an available review procedure an inadequate remedy at law by voluntarily forgoing it," _Alexander v. Americans United Inc._, 416 U.S. 752, 762 n.13, 94 S. Ct. 2053, 2059 n.13 (1974), and the court in _Judicial Watch_ likewise has observed that "the basis of the _Regan_ exception is _not_ whether a plaintiff has access to a legal remedy for the precise harm that it has allegedly suffered, but whether the plaintiff has any access at all to judicial review," _Judicial Watch_, 317 F.3d at 408.

## 2. The Availability of the _Enochs_ Exception

Returning to the present case, Defendant maintains that the AIA, by its plain language, operates to bar this suit, and that Holland cannot establish any exception to the statute that would allow this action to go forward. Before addressing this question, the Court notes that the parties agree on two threshold issues. First, Holland evidently does not challenge Defendant's assertion that he brought this action "for the purpose of restraining the assessment or collection of any tax" within the meaning of the AIA, notwithstanding Holland's election to caption his initial pleading as a petition for mandamus relief. _See Dickens v. United States_, 671 F.2d 969, 972 (6th Cir. 1982) (affirming the district court's dismissal of an action as barred by the AIA, despite the plaintiffs' "characteriz[ation] [of] their suit as a mandamus action" and their "request for a declaratory judgment"). Next, Holland does not seek to invoke any of the exceptions set forth in the text of the AIA itself, but instead relies solely on the two judicially recognized exceptions to this statute.

As already explained, the Supreme Court recognized the first of these two exceptions in _Enochs_, 370 U.S. at 7, 82 S. Ct. at 1129, holding that the AIA does not bar a suit to enjoin the collection or assessment of federal taxes "if it is clear that under no circumstances could the Government ultimately prevail," and "if equity jurisdiction otherwise exists" over the suit. Again, this exception is available only where the challenged collection effort "is plainly without a legal basis," such that the plaintiff can show a "certainty of success on the merits." _Bob Jones University_, 416 U.S. at 737, 745, 94 S. Ct. at 2046, 2050. In addition, Holland must establish that "equity jurisdiction otherwise exists" over this suit, _Enochs_, 370 U.S. at 7, 82 S. Ct. at 1129 — that is, that he "has no adequate remedy at law," _Dickens_, 671 F.2d at 971, and thus faces "irreparable harm" in the absence of injunctive relief, _Dominion National Bank_, 771 F.2d at 116.

In debating the strength of their respective positions on the merits, the parties focus upon the distinction in the Internal Revenue Code between one-time and continuing levies on a taxpayer's property or rights to property. As one court has explained in a case where, as here, the IRS issued a levy on the plaintiff's monthly social security benefits:

> A levy is an administrative order from the IRS seizing property belonging to a taxpayer in payment of an outstanding tax liability. [26 U.S.C.] § 6331(a). Individual income, including social security benefits, is partially exempt from levy under [26 U.S.C.] § 6334 in an amount equal to the sum of the taxpayer's standard deduction and personal exemptions. . . .

> An IRS levy is generally a one-time occurrence rather than a continuing event, seizing property in existence at the time the levy is served. [26 U.S.C.] §§ 6331(a) and (b). However, a

> one-time levy may seize a future stream of payments if the taxpayer's right to the payments is
> fixed and determinable without any requirement for the provision of future services.
> Alternatively, where these requirements may not be satisfied, a levy on salary or wages
> payable to or received by a taxpayer can also be continuous from the date the levy is first
> made until the levy is released pursuant to [26 U.S.C.] § 6331(e). Further provisions establish
> that this type of continuing levy on specified payments (which can also include the social
> security payments at issue here) is subject to a 15% cap. [26 U.S.C.] §§ 6331(h)(1) and (2).

*Bowers v. United States,* 860 F. Supp.2d 921, 922-23 (C.D. Ill.) (citations omitted), *aff'd,* 498 F. App'x 623 (7th Cir. Dec. 20, 2012); *see also Hines v. United States,* 658 F. Supp.2d 139, 145-46 (D.D.C. 2009) (distinguishing between one-time levies under 26 U.S.C. § 6331(a) and continuing levies under §§ 6331(e) and (h), with the latter "attach[ing] to new property rights as they arise but . . . limited to fifteen percent of any specified payment"). In Defendant's view, when the IRS issued a levy to the SSA in 2012 in an effort to collect Holland's tax liabilities, it did so under § 6331(a), and this one-time levy arising from Holland's purportedly fixed and determinable right to social security payments for as long as he lives is not subject to the 15-percent cap set forth in § 6331(h)(1). Holland, in contrast, contends that he has no vested right to future social security payments, and that his social security benefits instead are properly characterized as "a series of distinct separate payments, each of which is contingent upon the recipient surviving the preceding month." (Dkt. 10, Plaintiff's Response Br. at 14.) It follows, according to Holland, that a one-time levy cannot attach to social security payments beyond the month in which the levy is issued, and that the IRS must therefore proceed via continuing levies that are subject to § 6331(h)'s 15-percent cap.

As Defendant correctly observes, the pertinent case law overwhelmingly favors its position over Holland's. In *Hines,* 658 F. Supp.2d at 141, 145, for instance, the plaintiff brought suit against the United States "on the ground that levies attached by the Internal Revenue Service to his retirement benefits and other property were unlawful," and he argued more specifically that "the levy on his social security retirement benefits was illegal because it violated the fifteen percent cap on `continuous' levies imposed by 26 U.S.C. § 6331(h)." The court recognized that the plaintiff's social security payments could have been reached through continuing levies that would be subject to the 15-percent limit, but it found that the one-time levy issued by the IRS was not subject to this cap:

> The United States argues that because the IRS levied plaintiff's Social Security benefit
> payments, to which plaintiff had *an existing right* at the time the levy attached, the levy was
> appropriate under Section 6331(a), irrespective of the limitations of Section 6331(h). Plaintiff's
> right to receive periodic payments for his Social Security retirement benefits was a vested
> interest. The amount of benefits are calculable — they are based on earnings averaged over
> plaintiff's lifetime and determinable based upon a complex formula. The Social Security
> Administration's ongoing payment of a specific amount of retirement benefits to plaintiff every
> month therefore was an "obligation[] existing at the time" the levies attached under 26 U.S.C. §
> 6331(b). The levy appropriately could have been issued under Section 6331(a), and therefore
> was not limited by the fifteen percent cap.

> As the United States points out, the permissive language of the statute gives the Secretary
> discretion to approve levies under Section 6331(h) rather than under Section 6331(a), but
> Section 6331(h) does not *require* the Secretary to attach a continuous levy even where the
> type of property might be eligible for one. There is no evidence that the levies imposed on
> plaintiff's social security retirement benefits were issued under Section 6331(h) rather than
> under Section 6331(a), and no construction of the statutes that requires that they have been.

The United States has shown that the levies were not continuous levies, because the Social Security Administration was already obligated to make the periodic payments. . . . The levies were not unlawful.

*Hines,* 658 F. Supp.2d at 146-47 (citations omitted) (emphasis in original).

*Hines* is not alone in this conclusion. In *Bowers,* the court likewise determined that the plaintiff's "social security payments represent a present, vested right to receive such benefits in fixed monthly payments for the rest of his life" and that "[t]he amount of [these] benefits are calculable," and it therefore held that the IRS could seize the plaintiff's "entire stream of [social security] payments [through] a one-time levy pursuant to §§ 6331(a)-(b)." 861 F. Supp.2d at 923 (internal quotation marks and citations omitted). And other courts have similarly reasoned that "there is no statutory prohibition preventing the IRS from levying in excess of 15% of an individual's social security benefit payments." *Enax v. Commissioner of Internal Revenue,* No. 10-2652, 2011 WL 8150645, at *1 (M.D. Fla. Jan. 14, 2011);[5] *see also Clift v. United States Internal Revenue Service,* No. 16-5116, 2017 WL 517123, at *2 (W.D. Wash. Feb. 8, 2017); *Beam v. United States Government,* No. 07-6035, 2007 WL 1674083, at *1 (D. Or. June 6, 2007).

Holland has identified only one decision to the contrary. In *Anderson v. Internal Revenue Service (In re Anderson),* 250 B.R. 707, 709-11 (Bankr. D. Mont. 2000), the IRS filed federal tax liens against a debtor's property and issued a levy on his social security benefits before he filed for bankruptcy protection, and the court held that the social security payments made to the debtor following his bankruptcy discharge remained subject to the tax liens. The bankruptcy court further determined, however, that "any future levies by the IRS on [the debtor's] social security benefits should be limited to the 15 percent limitation contained in § 633[1](h)." *Anderson,* 250 B.R. at 710. In support of this conclusion, the court cited a passage from the legislative history of the Taxpayer Relief Act of 1997 — the enactment through which § 6331(h) and its 15-percent cap were added to the Internal Revenue Code — stating that "Social Security payments, which are subject to levy under present law, would become subject to continuous levy," and that "this levy would attach up to 15 percent of any specified payment due the taxpayer." *Anderson,* 250 B.R. at 710 (quoting Conference Report on H.R. 2014, Taxpayer Relief Act of 1997, 143 Cong. Rec. H6409-01, 1997 WL 428059, at *468 (daily ed. July 30, 1997)); *but see Enax,* 2011 WL 8150645, at *1 n.3 (faulting the court in *Anderson* for "providing only a limited rationale for its decision based on a single, unexplained quote within the legislative history").

More generally, Holland challenges the notion that future payments of social security benefits can be reached via one-time levies issued under § 6331(a). As he observes, such a one-time levy may "extend only to property possessed and obligations existing at the time" it is issued, 26 U.S.C. § 6331(b), and the pertinent Treasury Regulation provides that "[o]bligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date," 26 C.F.R. § 301.6331-1(a)(1). In Holland's view, future social security payments are not "fixed and determinable" within the meaning of this regulation because each such payment is "distinct" and "contingent upon the recipient surviving" the month preceding the payment. (Plaintiff's Response Br. at 14.) He recognizes, however, that some courts have held to the contrary. *See Bowers,* 861 F. Supp.2d at 923 (holding that the plaintiff's "social security payments represent a present, vested right to receive such benefits in fixed monthly payments for the rest of his life"); *Hines,* 658 F. Supp.2d at 146 (finding that the plaintiff's social security payments were properly subject to a one-time levy under § 6331(a), where his "right to receive periodic payments for his Social Security retirement benefits was a vested interest," and where "[t]he amount of benefits are calculable"); *O'Donnell v. United States,* No. 13-1238, 2014 WL 5350448, at *3 (S.D. Ill. Oct.

21, 2014) (explaining that "a levy may seize a future stream of payments to which the taxpayer has an unqualified fixed right," and concluding that there was "nothing wrong with" the IRS's levy on the plaintiff's "right to receive future social security or pension payments"), *aff'd*, 611 F. App'x 879 (7th Cir. May 26, 2015); *see generally* <u>Wessel v. United States (In re Wessel)</u>, 161 B.R. 155, 159 (Bankr. D.S.C. 1993) (rejecting the notion that "staying alive is . . . a condition precedent" to the debtor's acquisition of a property right in an annuity, and instead concluding that "death terminates this previously created property right in the annuity").

As Defendant observes, it is not necessary for the Court to choose a side in this debate. Rather, as the Supreme Court has emphasized, the AIA exception recognized in *Enochs* is unavailable if the parties' respective positions "are sufficiently debatable to foreclose any notion that under no circumstances could the Government ultimately prevail." <u>Bob Jones University</u>, 416 U.S. at 749, 94 S. Ct. at 2052 (internal quotation marks and citations omitted). Accordingly, just as the Seventh Circuit concluded in <u>Bowers</u>, 498 F. App'x at 627, Holland cannot establish that his success here is "certain" and that the Government cannot hope to prevail, in light of the several other district courts that have "already ruled that the 15% cap of § 6331(h) does not diminish the IRS's power to levy 100% of assets under § 6331(a)." The very fact that courts disagree on the applicability of § 6331(h)'s 15-percent limit to levies on social security benefits — with, as noted, a substantial majority of courts concluding that such levies are not subject to the cap — precludes Holland from demonstrating a certainty of success on the merits of his challenge to the IRS's levy on the full amount of his social security benefits.

Even if Holland could show that he was certain to prevail on this claim, he would have to establish in addition that he "has no adequate remedy at law," <u>Dickens</u>, 671 F.2d at 971, and thus would suffer "irreparable harm" in the absence of injunctive relief, <u>Dominion National Bank</u>, 771 F.2d at 116. In Defendant's view, Holland cannot make this showing because his alleged injury — the deprivation of his social security benefits — is redressable through money damages, and hence is not irreparable. *See* <u>Basicomputer Corp. v. Scott</u>, 973 F.2d 507, 511 (6th Cir. 1992) ("[A] plaintiff's harm is not irreparable if it is fully compensable by money damages.").

Indeed, Defendant points out that the Internal Revenue Code expressly authorizes the filing of a "civil action for damages" to challenge an allegedly unlawful collection effort. 26 U.S.C. § 7433(a).[6] Although Defendant opines that any such suit for damages arising from the 2012 levy on Holland's social security benefits might well be time-barred, and might also be vulnerable to challenge on other grounds such as lack of administrative exhaustion, and the Supreme Court has emphasized that "[a] taxpayer cannot render an available review procedure an inadequate remedy at law by voluntarily forgoing it." <u>Alexander</u>, 416 U.S. at 762 n.13, 94 S. Ct. at 2059 n.13. Moreover, to the extent that Holland suggests that a suit for damages would be futile because any money judgment he obtained "would be seized" to offset his sizable tax debts, (Plaintiff's Response Br. at 4), Defendant acknowledges in response that this is "probably true," but it reasons that Holland's success in such a suit undoubtedly would cause the IRS to "stop[] levying more than 15% of his social security, making a formal injunction unnecessary," (Dkt. 11, Defendant's Reply Br. at 5).

In light of this adequate remedy at law — regardless of whether it might be available under the particular circumstances presented here — Holland has not shown that he will suffer irreparable harm in the absence of injunctive relief. Because he likewise has failed to establish a "certainty of success on the merits" of his claim for mandamus relief, <u>Bob Jones University</u>, 416 U.S. at 737, 94 S. Ct. at 2046, the AIA exception recognized in *Enoch* is not available here.

## 3. The Availability of the *Regan* Exception

The second of the judicially recognized exceptions to the AIA was articulated by the Supreme Court in *South Carolina v. Regan*, 465 U.S. 367, 104 S. Ct. 1107 (1984). Specifically, the Court held in that case that "Congress did not intend the [AIA] to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." *Regan*, 465 U.S. at 378, 104 S. Ct. at 1114 (footnote omitted). As noted earlier, one court has observed that "the basis of the *Regan* exception is *not* whether a plaintiff has access to a legal remedy for the precise harm that it has allegedly suffered, but whether the plaintiff has any access at all to judicial review." *Judicial Watch*, 317 F.3d at 408 (emphasis in original).

For largely the same reasons already discussed, Holland cannot invoke this exception here. As observed earlier, Congress has provided an avenue through which Holland may challenge the allegedly unlawful levy on one hundred percent of his social security benefits — namely, an action for damages under 26 U.S.C. § 7433(a). Indeed, the plaintiff in *Hines, supra,* invoked precisely this mechanism for challenging the IRS's allegedly unauthorized levy of more than 15 percent of his social security benefits, and by doing so, he avoided the potential bar of the AIA and secured a ruling (albeit unfavorable) on the merits. *See Hines*, 658 F. Supp.2d at 143, 145-47. This same avenue is available to Holland to seek judicial review of the allegedly unlawful seizure of the entirety of his social security benefits — as he evidently recognizes, having requested leave to amend his complaint in order to assert a claim under § 7433(a).

To be sure, Holland questions the adequacy of this remedy, given that he "owes the government $19 million" and any money judgment he obtains would likely be seized by the Government to offset his tax obligations. (Plaintiff's Response Br. at 4.) As already explained, however, the *Regan* exception applies only where the aggrieved party has no "alternative legal avenue by which to contest the legality of a particular tax." *Regan*, 465 U.S. at 373, 104 S. Ct. at 1111. Accordingly, so long as Congress has granted access to judicial review, it does not matter whether Holland also "has access to a legal remedy for the precise harm that [he] has allegedly suffered." *Judicial Watch,* 317 F.3d at 408. In addition, Defendant notes that a ruling in Holland's favor as to the legality of the IRS's levy would likely lead this agency to abandon a collection effort that had been deemed unlawful, and to instead limit its levy going forward to 15 percent of Holland's social security benefits.

Consequently, because Congress has provided an alternative remedy in the form of a suit for damages, Holland cannot invoke the *Regan* exception to the AIA. Moreover, to the extent that the adequacy of this alternative remedy is a relevant consideration, Holland cannot show that a suit for damages is so patently inadequate as a means of securing judicial review as to be tantamount to no remedy at all. It follows that Holland's claim for mandamus relief is barred by the AIA, where he has not shown that any statutory or judicially recognized exception to the Act is applicable here.

## B. Holland's Proposed Amendments to His Complaint Would Be Futile.

In his initial complaint, Holland sought only mandamus relief — specifically, an order prohibiting Defendant from levying on more than 15 percent of his monthly social security benefits. In light of the Court's determination that this claim for mandamus relief runs afoul of the AIA, this suit is subject to dismissal unless Holland is able to identify an alternative, viable theory of recovery that does not implicate the AIA. Through his recent motion, Holland contends that he has identified such a theory of recovery — namely, a

claim for damages under 26 U.S.C. § 7433(a) — and he seeks leave of the Court to file an amended complaint in which he asserts such a claim, and also names the Acting Commissioner of Social Security as an additional defendant. In response, Defendant argues that Holland's proposed amendments to his complaint would be futile, where the resulting amended pleading would be unable to withstand dismissal under Rule 12(b)(6). As discussed below, the Court agrees.

As observed earlier, although leave to amend a complaint should be "freely" granted, Fed. R. Civ. P. 15(a)(2), the Court "need not grant leave to amend . . . where amendment would be futile." _Miller_, 408 F.3d at 817 (internal quotation marks and citation omitted). In this case, one of the two amendments sought by Holland is readily characterized as futile. Specifically, as support for his request to name the Acting Commissioner of Social Security as an additional defendant, Holland points to Defendant's argument in its motion to dismiss that mandamus relief cannot be awarded against the United States, but only against a federal officer or employee. _See_ 28 U.S.C. § 1361 (authorizing an "action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"). Although naming an individual federal officer as a defendant might cure this apparent deficiency in Holland's initial complaint, it would do nothing to address, much less overcome, the separate and independent ground for dismissal of Holland's claim for mandamus relief — namely, that this claim runs afoul of the AIA.

This leaves only Holland's request for leave to assert a claim for damages under 26 U.S.C. § 7433(a). As noted earlier, Defendant cited the availability of a damages remedy under § 7433(a) as foreclosing Holland's appeals to either of the judicially recognized exceptions to the AIA, but it questioned whether Holland could prevail on such a claim, in light of his apparent failure to exhaust his administrative remedies or bring this claim within the applicable two-year period of limitation. Although Holland evidently has cured the first of these alleged deficiencies by submitting an administrative claim to the IRS, Defendant continues to maintain that any claim Holland might pursue under § 7433(a) would be time-barred. It follows, in Defendant's view, that Holland's proposed amendment of his complaint to assert a § 7433(a) claim for damages should be denied as futile.

As noted, a claim for damages under § 7433(a) "may be brought only within 2 years after the date the right of action accrues." 26 U.S.C. § 7433(d)(3). Under the relevant agency regulation, a right of action "accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433-1(g)(2). One court has observed that "[t]he language in the regulation — a `reasonable opportunity' — sets a relatively low bar," and that this provision "bars a suit a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." _Keohane v. United States_, 669 F.3d 325, 329 (D.C. Cir. 2012) (internal quotation marks and citation omitted); _see also Kovacs v. United States_, 614 F.3d 666, 674 (7th Cir. 2010) (explaining that the "statute of limitations begins to run once a plaintiff has knowledge that would lead a reasonable person to investigate the possibility that his legal rights had been infringed" (internal quotation marks and citations omitted)). Moreover, "[i]t does not matter whether the plaintiff knows the injury is actionable — he need only know that he has been injured." _Kovacs_, 614 F.3d at 674 (internal quotation marks and citations omitted).

Applying this standard here, Defendant contends that the two-year period of limitation for Holland to bring a claim under § 7433(a) began to run in 2012, when the IRS issued a levy to the SSA and began receiving payments from the SSA in the amount of 100 percent of Holland's monthly social security benefits. Holland seemingly acknowledges that these events occurred in 2012. (_See, e.g.,_ Dkt. 1, Mandamus Petition at ¶ 4 ("The continuous levy against Plaintiff appears to have been sent to the Social Security Administration in

2012."); Plaintiff's Response Br. at 10 (stating that as a "result of a single Notice of Levy sent in 2012," the SSA "is currently sending 100% of Mr. Holland's Social Security benefits to the Internal Revenue Service every month"); Dkt. 18, Plaintiff's Reply Br. at 4 (identifying 2012 as the year "when the government first started taking 100% of Holland's monthly social security benefits").) Moreover, he does not allege, either in his initial or proposed amended complaint, that he lacked notice of the levy issued by the IRS to the SSA, or that he was unaware of the fact that 100 percent of his social security benefits have been diverted to the payment of his tax liabilities since 2012.

As Defendant points out, a number of courts have found that the two-year statute of limitations for a § 7433(a) suit begins to run when the plaintiff receives notice of the IRS levy giving rise to a claim under the statute. *See, e.g., Keohane,* 669 F.3d at 329; *Kovacs,* 614 F.3d at 674; *Copeland v. United States,* No. 14-1152, 2014 WL 6775425, at *3-*4 (N.D. Ohio Dec. 2, 2014). Alternatively, in cases where there is a question as to when or whether the plaintiff received notice of the levy, the courts have held that the statute of limitations begins to run when the plaintiff learns that the IRS has commenced collection efforts pursuant to the levy. *See, e.g., Shipley v. Internal Revenue Service,* No. 05-3273, 2006 WL 497720, at *1 (10th Cir. March 2, 2006); *Voulgaris v. Internal Revenue Service,* No. 17-13129, 2018 WL 4220392, at *4 (E.D. Mich. Sept. 5, 2018); *Caudill v. United States,* No. 12-05065, 2012 WL 2688806, at *2 (W.D. Wash. June 15, 2012); *Bright v. United States,* 446 F. Supp.2d 339, 345 (E.D. Pa. 2006). In this case, then, regardless of whether Holland had notice of the levy issued by the IRS to the SSA in 2012, the latter agency began that same year to withhold 100 percent of Holland's social security benefits pursuant to this levy, and Holland does not contend that he was unaware of this development. It follows, in Defendant's view, that the two-year statute of limitations for a § 7433(a) claim challenging the legality of this levy began to run in 2012, and that this limitation period had long since expired when Holland brought this suit in December of 2017.

Holland suggests two grounds for avoiding this result, but neither is persuasive. First, Holland contends that his right of action under § 7433(a) accrued only after he commenced this suit, because only then did he "discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433-1(g)(2). Specifically, he submits that until recently, it would have been futile to pursue a claim under § 7433(a), because any eventual monetary recovery he might have obtained in such a suit would surely have been seized by the IRS as partial payment of his outstanding tax liabilities. This all changed, in Holland's view, when defense counsel stated at the April 12, 2018 hearing on Defendant's motion that Holland's success in a § 7433(a) action likely would lead the IRS to abandon its levies of 100 percent of Holland's monthly social security benefits, since a ruling in Holland's favor under § 7433(a) would necessarily entail a finding that this 100-percent levy was unlawful. Holland argues that this representation at oral argument should be deemed an "essential element" of a cause of action under § 7433(a), because absent defense counsel's assurance on this point, "a § 7433 action would not result in the cessation of the levies" that are causing him injury. (Plaintiff's Reply Br. at 5.)

This argument, however, rests upon a flawed understanding of the "essential elements" of a claim under § 7433(a). Holland does not deny that once the SSA began in 2012 to divert the entirety of his monthly social security payments to the IRS, he knew all of the facts necessary to initiate a challenge under § 7433(a) to the legality of the levy that brought this about. As the courts have explained, once Holland became aware of this injury, the statute of limitations began to run, regardless of whether he knew this injury was actionable. *See Keohane,* 669 F.3d at 329 n.2; *Kovacs,* 614 F.3d at 674. Similarly, Holland was "chargeable with knowledge of the law," *Dziura v. United States,* 168 F.3d 581, 583 (1st Cir. 1999), and he was "presumed . . . to know the legal consequences of the facts [he] discover[ed]," *Bright,* 446 F. Supp.2d at 345 n.16, so it is immaterial whether Holland knew back in 2012 that a levy on social security benefits might

be subject to a 15-percent limit, or whether he only became aware of this alleged statutory cap at some point thereafter.

Under these same principles, it makes no difference, for statute of limitations purposes, that Holland and his counsel only recently discerned a strategic benefit to be gained from a § 7433(a) suit, even if the IRS were to seize the entirety of any monetary judgment awarded in this action. Notably, this benefit presumably was available all along, even if Holland and his counsel only became aware of it when defense counsel explicitly pointed it out at oral argument. Regardless, when the entirety of Holland's social security benefits were diverted to the IRS beginning in 2012, he possessed all of the facts needed to bring a claim under § 7433(a), and this sufficed to commence the running of the two-year statute of limitations. Any evolution in Holland's or his counsel's understanding of either the legal theories of recovery triggered by these 2012 developments or the strategic value of pursuing such a recovery does not affect the running of the limitation period.

Next, Holland appeals to a "continuing violation" theory as a means of extending the period of limitation for bringing suit under § 7433(a). Under the levy issued by the IRS to the SSA in 2012, each monthly social security payment that Holland would otherwise have received has instead been diverted toward the repayment of his federal tax liabilities. It follows, according to Holland, that each monthly payment withheld from him pursuant to the IRS levy should give rise to a separate claim under § 7433(a), where each such deprivation of social security benefits constitutes a separate injury and satisfies the damages element of a distinct claim. Thus, he reasons that he should at least be able to recover under § 7433(a) for each of the social security payments withheld from him in the past two years.

As Defendant notes in response, however, the case law on point undermines this claim of a continuing violation. In _Keohane_, 669 F.3d at 327, 329, for instance, plaintiff Paul Keohane (like Holland here) challenged an IRS levy of his monthly social security benefits as exceeding an alleged 15-percent statutory limit, and he sought to overcome a statute of limitations defense by "point[ing] to the continuing violation doctrine and claim[ing] that the statute of limitations didn't expire until two years after the IRS's last wrongful collection from his Social Security benefits." The court held that the doctrine did not operate to bring Keohane's § 7433(a) claim within the two-year period of limitation:

> We have said that a continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality. Under the continuing violation doctrine, the statute of limitations begins to run only after the date of the last injury.

> But the continuing violation doctrine does not help Keohane here. Under Keohane's theory, the IRS violated [26 U.S.C. §] 6331(h)(1) when it issued a single paper levy with the effect of automatically taking more than 15% of his Social Security benefits each month. Its "character" as an alleged violation would have been clear had Keohane inquired; no "cumulative effect" was necessary to reveal its supposed illegality. As other courts have noted in somewhat analogous cases on tax liens, once Keohane knew of the levy, nothing prevented him from recognizing the potential injury at that time, nor would later events provide any greater insight into his possible cause of action The continuing violation doctrine does not apply here.

_Keohane_, 669 F.3d at 329-30 (internal quotation marks and citations omitted); *see also Dziura*, 168 F.3d at 583 (explaining that the continuing violation doctrine "is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it"); *Zinstein v. United States,* No. 13-633, 2013 WL 5504418, at *4 (E.D. Va. Oct. 2, 2013) (observing that "most courts have rejected the application of a continuing violation theory in th[e] context" of tax levies), *aff'd,* 584 F. App'x 100 (4th Cir. Oct. 1, 2014).

Precisely the same can be said here. As a result of a single levy issued by the IRS in 2012, each monthly payment of Holland's social security benefits over the past several years has been withheld from him and credited toward the repayment of his tax liabilities. The injuries inflicted by these diverted payments would have been evident to Holland at the time, and did not hinge upon the cumulative effect of multiple withheld payments or any other subsequent developments. As explained in _Keohane_, 669 F.3d at 330, Holland did not gain any "greater insight into his possible cause of action" over time as the SSA continued to divert his monthly benefit payments to the IRS pursuant to the 2012 levy. Rather, his injuries flowed from the one-time IRS levy issued in 2012, and the fact that this "singular act" brought about "continuing consequences" does not affect the running of the statute of limitations or trigger additional limitation periods within which to bring claims under § 7433(a). _Gilbert v. City of Cambridge_, 932 F.2d 51, 58-59 (1st Cir. 1991); *see also* _Trzebuckowski v. City of Cleveland_, 319 F.3d 853, 858 (6th Cir. 2003) (distinguishing between "a continuing violation and a continuing effect of a prior violation").

Holland's efforts to distinguish or evade this case law are unavailing. Most notably, he challenges Defendant's reliance on cases that were brought only after the levies at issue had ended, arguing that these rulings are inapposite where, as here, a "levy is still ongoing at the time of suit." (*See* Plaintiff's Reply Br. at 6-7.) Yet, Holland fails to explain how the reasoning of the courts that have rejected appeals to the continuing violation doctrine turns in any way upon whether the government's collection efforts were ongoing or had ceased before the suit was filed. In either event, the courts were addressing the very same issue presented here — namely, whether ongoing collection efforts that extend into the two-year period before a suit is filed trigger a plaintiff's opportunity to assert a § 7433(a) claim involving a levy issued outside this two-year period. In each of the above-cited cases, the court answered this question in the negative, and Holland has not identified any case law to the contrary.

Holland next seeks to characterize the levy issued by the IRS in this case as "continuous" or "perpetual," such that it "create[s] a problem under the statute of limitations" and triggers the prospect that the levy might evade judicial review "even if [it is] illegal." (Plaintiff's Reply Br. at 8.) To the extent, however, that Holland is merely reiterating his argument that the statutory scheme governing IRS levies mandates that the agency must proceed via a series of continuing levies that are subject to a 15-percent cap, the Court explained earlier that the case law overwhelmingly holds to the contrary, and permits the IRS to proceed through one-time levies that reach future payments of social security benefits.

As for Holland's more general complaint that an unlawful levy might not be subject to judicial review, he plainly had a two-year window of opportunity to seek this review once the SSA began to withhold his social security benefits in 2012. Although application of the continuing violation doctrine would extend this opportunity, the courts have uniformly declined this invitation to enlarge the time period for bringing a § 7433(a) claim based on the continuing effects of a one-time levy, and this Court finds no basis for staking out new ground on this issue. Instead, the Court holds that Holland's request for leave to amend his complaint to assert a claim for damages under § 7433(a) must be denied as futile, where any such claim would be time-barred.

# V. CONCLUSION

For these reasons, the Court GRANTS Defendant's February 6, 2018 motion to dismiss (Dkt. 8), and DENIES Plaintiff's November 21, 2018 motion for leave to file a first amended complaint (Dkt. 15). In addition, the Court DENIES Plaintiff's February 11, 2019 motion to supplement his response to Defendant's motion to dismiss (Dkt. 19).

IT IS SO ORDERED.

[1] More recently, Holland has filed a February 11, 2019 motion for leave to supplement his response to Defendant's motion to dismiss. Specifically, he wishes to submit an exhibit in support of the merits of his claim that the IRS may not lawfully collect more than 15 percent of his monthly social security benefits. As discussed below, however, the Court finds it unnecessary to address this claim on the merits, so Holland's proposed exhibit has no bearing on the outcome of Defendant's motion.

[2] As discussed below, Holland seeks to pursue a claim for damages in his proposed amended complaint, but no such claim is asserted in his initial complaint.

[3] Defendant asserts, and Holland does not dispute, that it is pursuing a facial (as opposed to a factual) challenge to the Court's subject matter jurisdiction. *See Gentek Building Products*, 491 F.3d at 330 (distinguishing between these two forms of jurisdictional attacks).

[4] Holland initially filed an amended complaint without seeking leave to do so. He now concedes, however, that the deadline for amending his complaint as a matter of course has passed, *see* Fed. R. Civ. P. 15(a)(1)(B), and that he instead must obtain leave of the Court to file this amended pleading.

[5] The Eleventh Circuit vacated the district court's ruling in *Enax,* on the ground that the lower court should have dismissed the case for lack of subject matter jurisdiction rather than addressing the plaintiff's complaint on the merits. *See Enax v. Commissioner of IRS,* No. 11-11007, 476 F. App'x 857, 860 (11th Cir. May 24, 2012).

[6] As noted earlier, Holland seeks to assert a claim under § 7433(a) in his proposed amended complaint. This matter is addressed in greater detail below.

Save trees - read court opinions online on Google Scholar.