UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAHLILIA YVETTE DAVIS,

        Plaintiff,

v.

36TH DISTRICT COURT and
NANCY BLOUNT,

        Defendants.

                                     /

Case No. 2:20-cv-12145

HONORABLE STEPHEN J. MURPHY, III

## **OMINUBUS OPINION AND ORDER**

Plaintiff Kahlilia Davis sued the 36th District Court of Michigan and former Chief Judge Nancy Blount and alleged federal and state claims. ECF 1. Defendants promptly moved to dismiss the complaint and for sanctions, ECF 16, 18, and Plaintiff responded, ECF 20. The parties then stipulated to dismiss Defendant 36th District Court. ECF 29. As a result, the Court will deny the 36th District Court's motion to dismiss as moot.

The Court reviewed the briefs on Defendant Blount's motion to dismiss and finds that a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1. For the following reasons, the Court will grant in part and deny in part the motion to dismiss.

1

## BACKGROUND[1]

Plaintiff is a Michigan District Court Judge who was first elected to a judgeship in 2016. ECF 1, PgID 2. Defendant was the Chief Judge of the 36th District Court from Plaintiff's election until January 2020. *Id.* Plaintiff alleged that after her election, Defendant's "office refused to provide [her with] the necessary new hire and health insurance forms" and that Plaintiff had to purchase her own insurance. *Id.* at 3. Plaintiff was then told to report to Defendant's office to fill out health insurance and other new hire forms. *Id.* at 4.

A few days before Plaintiff was to take the bench and start her term, she informed Defendant that she had been admitted to the hospital with an infection. *Id.* Defendant responded to Plaintiff that she would need to show a doctor's note. *Id.* Plaintiff provided the note, and because of unforeseen events, she was unable to work for another three months. *Id.* While Plaintiff was on medical leave, the court administrator emailed her and asked if she wanted her chambers painted. *Id.* at 5. Plaintiff responded that she wanted her office painted. *Id.* Plaintiff "also explained that she would need a super heavy-duty weight toilet for support; and, super heavy-duty chairs for her office as well." *Id.* In response to Plaintiff's request, Defendant demanded Plaintiff provide a medical diagnosis explaining why she needed the heavy-duty furniture and why she "had 'been off for six weeks.'" *Id.*

---

[1] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding of fact.

2

Roughly two months after Plaintiff's term started, she was able to return to work. The night before her first day of work, Plaintiff attempted to drop off her robe, but she was denied access to the courthouse. *Id*. And when she did gain access to the building, she found her chambers full of clutter. *Id*. at 6. After her return, Defendant required Plaintiff to attend an independent medical examination, for which Plaintiff received a bill. *Id*.

Plaintiff alleged that, subsequent to her return to work, an individual named Paul Paruk[2] threatened to have Plaintiff removed from the bench. *Id*. at 7. Paruk allegedly continued to intimidate and interfere with Plaintiff and her duties. *Id*. at 8–14. Besides Paruk, Plaintiff alleged that Defendant continued to interfere with her by, for example, removing her email access, not allowing her to use sick days, not allowing her to use the staff restroom, and not allowing certain bathroom fixtures in Plaintiff's chambers' restroom. *Id*. at 14–16.

Defendant then assigned Plaintiff the "Landlord/Tenant Docket." *Id*. at 17. While presiding over the docket, Plaintiff determined that one of the court officers was allegedly not serving papers on parties in cases, so she dismissed all cases in which he was involved. *Id*. At the same time, Plaintiff tried to hire a court reporter or secretary, but Defendant refused her request to do so. *Id*. at 17–18. Plaintiff later determined that another process server was inadequately serving the parties, so she sentenced him to five days in jail for contempt. *Id*. at 20. Just after Plaintiff found

---

[2] The complaint did not identify Paruk's employment position, but Plaintiff's motion to amend identifies him as a "regional state court administrator." ECF 23, PgID 553.

3

the server in contempt, Defendant removed her from the landlord/tenant docket and assigned her to the small claims appeals docket. *Id.* After reassignment, Plaintiff asked Defendant for a courtroom closer to her chambers because she needed to be closer to her restroom. *Id.* Defendant denied the request, and later removed "Plaintiff from hearing all cases." *Id.*

Next, Defendant, along with other non-party Michigan court administrators, allegedly created a "performance improvement plan" for Plaintiff. *Id.* at 22. Plaintiff allegedly requested to shadow another judge, but her request was denied. *Id.* Defendant then created an "Auxiliary Judge" position for Plaintiff. *Id.*

While acting as the Auxiliary Judge, Plaintiff requested vacation time, but the request was denied. *Id.* at 23. Plaintiff also requested time off for an MRI but was again denied. *Id.*

In the meantime, Plaintiff's secretary continued to request that a court reporter be appointed for Plaintiff, but Defendant simply assigned Plaintiff to a "video courtroom" rather than assigning a court reporter. *Id.* at 24. Plaintiff also requested another courtroom change. *Id.* at 25. In response, Defendant allegedly banned Plaintiff from using the judge's entrance and made her enter and exit through the main entrance. *Id.* Plaintiff then emailed Defendant and said that the long walk to use the employee entrance aggravated her "edema, back pain, and knee pain." *Id.* at 26. Defendant responded by allowing Plaintiff to skip to the front of the line and to use a wheelchair. *Id.* But Plaintiff claimed that the wheelchair was too large to fit through the door and that she was unable to propel the chair by herself. *Id.* at 26–27.

4

Finally, Plaintiff alleged that Defendant restricted her access to the judicial conference room and Plaintiff's own chambers. *Id.* at 28. Defendant then allegedly conspired with several individuals to file a complaint against Plaintiff with the Judicial Tenure Commission. *Id.* at 29. As a result of all the actions, Plaintiff filed the present complaint.

## LEGAL STANDARD

When analyzing a motion to dismiss under Civil Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett*, 528 F.3d at 430. The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

I.   Motion to Dismiss

Plaintiff brought three claims against Defendant. Before reviewing the merits of each claim, the Court must determine whether Defendant is entitled to judicial

5

immunity.³ Judicial immunity protects judges from injunctive relief and monetary damages and is abrogated only when a judge is not acting in a judicial capacity, or acts in the absence of all jurisdiction. *Kipen v. Lawson*, 57 F. App'x 691, 691 (6th Cir. 2003); *see also Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). "In determining whether an act is judicial [the Court must] examine the nature and function of the act, not the act itself." *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (internal quotations omitted) (quoting *Waco*, 509 U.S. at 13). "[E]ven if a particular act is not a function normally performed by a judge, [the Court is] directed to look to the particular act's relation to a general function normally performed by a judge." *Id.* (alterations in original and added) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997)).

In response to the motion to dismiss, Plaintiff argued that Defendant is not entitled to judicial immunity because she "was acting outside the judicial capacity." ECF 20, PgID 468. To determine whether Defendant is entitled to judicial immunity the Court must look at Plaintiff's three claims individually and determine which claims stem from judicial actions versus non-judicial actions. *Johnson*, 125 F.3d at 333. The Court will first determine whether Defendant is entitled to judicial immunity. If not, the Court will determine whether each claim must be dismissed for failure to state a claim. Finally, as a matter of practice the Court will review the federal claims first, and then the state law claims.

---

³ Defendant also argued that she is entitled to immunity under Michigan's Governmental Tort Liability Act. ECF 18, PgID 438. The Act offers immunity for state law claims. *Peterson v. Heymes*, 931 F.3d 546, 557 (6th Cir. 2019).

6

## A. Conspiracy Under 42 U.S.C. § 1985(2), (3).

Plaintiff did not distinguish whether she asserted the conspiracy claim against Defendant in her official or individual capacity. Either way, the conspiracy claim fails because Defendant is entitled to judicial immunity and Plaintiff failed to state a claim on which relief can be granted. *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (explaining that judicial immunity applies to both official and individual capacity claims).

### 1. Judicial Immunity

Plaintiff alleged that Defendant conspired with other individuals "for the purposes of impeding, hindering, obstructing, or defeating the due course of justice." ECF 1, PgID 30. Plaintiff specifically alleged that Defendant and others conspired to deny her access to health insurance, deny her access to the elected official/employee restroom in the courthouse, "tak[e] Plaintiff['s] . . . vacation time, instead of sick time," and attempt to prevent Plaintiff from hearing any cases. *Id.* at 30–31.

There is a clear distinction in the allegations. On the one hand, Defendant's alleged actions related to Plaintiff's access to health insurance, use of employee restrooms, and trouble with her vacation time are "not themselves judicial or adjudicative." *Forrester v. White*, 484 U.S. 219, 229 (1988). Instead, decisions relating to one's insurance, access, and vacation "are functions ordinarily performed by nonjudicial employers and, when judges perform them, the actor is different but the nature of the action is not." *Sparks v. Character & Fitness Comm. of Ky.*, 859 F.2d 428, 433 (6th Cir. 1998). Defendant is therefore not entitled to judicial immunity on

7

Plaintiff's conspiracy claims related to insurance, restrooms, and vacation time complaints.

On the other hand, Defendant's decision to prevent Plaintiff from hearing cases was part of her express authority as Chief Judge. *See* Mich. Ct. R. 8.110(C)(3)(a)–(b) (Michigan Court Rule granting a chief judge the power to "supervise caseload management and monitor disposition of the judicial work of the court" and "direct the apportionment and assignment of the business of the court."). Thus, based on the Michigan Court Rules, Defendant's authority to supervise that court's caseload and "direct the apportionment" of cases is a function that is "so inherently related to the essential functioning of the court[] as to be traditionally regarded as [a] judicial act." *Sparks*, 859 F.2d at 433. The Court will therefore grant Defendant judicial immunity on Plaintiff's conspiracy claims as they relate to docket assignment and the apportionment and assignment of the 36th District Court's caseload.

### 2. *Failure to State a Claim*

Defendant alternatively argued that the conspiracy claims should be dismissed for several reasons, including the fact that "[P]laintiff has not alleged a racial or other class based invidiously discriminatory animus." ECF 18, PgID 442, 444–45. The Court agrees.

Section 1985(2) "prohibits conspiracies to influence parties, witness[es], or jurors in federal court proceedings . . . and conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights.'" *Curser v. Allard*, 969 F.3d 604, 618 (6th Cir. 2020) (quoting *Fox v. Mich. State Police*

8

*Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)). To succeed on a § 1985(2) claim "plaintiff must also allege that the conspiracy was motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Taylor v. Streicher*, 465 F. App'x 414, 419 (6th Cir. 2012) (quoting *White v. Trapp*, 93 F. App'x 23, 26 (6th Cir. 2004)). And, to state a claim under § 1985(3), "'which prohibits conspiracies to deprive persons of their equal protection rights, a plaintiff must allege that there was some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Curser*, 969 F.3d at 618 (quoting *Fox*, 173 F. App'x at 376). Thus, Plaintiff must allege racial or otherwise class-based discrimination to succeed on her claims under § 1985(2) and (3).

But the complaint does not allege that the alleged conspiracy was motivated by "some racial, or perhaps otherwise class-based" animus. *Curser*, 969 F.3d at 618 (quotation omitted); *see also Taylor*, 465 F. App'x at 419. Because Plaintiff did not allege that she was discriminated against based on a racial or otherwise class-based animus, her § 1985(2) and (3) claims must fail as a matter of law.

    B.    Monell *Claim*

A municipal entity "may not be sued . . . for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, liability is created "when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [] injury." *Id.*

9

Here, Plaintiff has not expressly stated whether her *Monell* claim is against the 36th District Court, which has already been dismissed, or Defendant in her official or individual capacity. ECF 1, PgID 35–37. But a *Monell* claim against a party in an individual capacity is "improper." *Phillips v. City of Cincinnati*, No. 18-cv-541, 2019 WL 2289277, at *6 (S.D. Ohio May 29, 2019) ("[T]he [purpose] of *Monell* is to impose liability on a *municipality* under certain circumstances—not individuals.") (emphasis in original). Plaintiff's *Monell* claim therefore can only be asserted against Defendant in her official capacity or against the 36th District Court. And, "to the extent that Plaintiff[] bring[s] *Monell* claims against [Defendant Blount] in her official capacity, the claims are properly construed as against the" 36th District Court. *Id.* (collecting cases). In fact, "[c]ourts regularly dismiss as redundant claims against agents in the official capacities when the principal entity is also named as a defendant in the suit." *Johnson v. Wash. Cnty. Career Ctr.,* No. 2:10-cv-076, 2010 WL 2570929, at *4 (S.D. Ohio June 22, 2010). Because the principal entity under complaint, the 36th District Court, was also a named defendant in the suit prior to a stipulated dismissal, the Court will dismiss the *Monell* claim as it relates to Defendant Blount.

    C.    *Violation of Michigan Public Policy*

The Court has, to date, exercised supplemental jurisdiction over the state law claim. ECF 1, PgID 32–34. But a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c). Generally, district courts

10

should decline to exercise supplemental jurisdiction over a state law claim when all federal law claims have been dismissed from the case before trial. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.").

The Court will therefore now decline to further exercise supplemental jurisdiction over the state law claim. For one, the Court lacks original jurisdiction over the claim. And two, the interests of judicial economy do not override the presumption against retaining the case because the parties have not even begun discovery. *See Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). Finally, federalism supports allowing the Michigan Courts to determine whether Defendant is entitled to immunity under Michigan law or if Plaintiff is entitled to damages. For those three reasons, the Court will dismiss the state law claim without prejudice. Because the Court is declining to resolve the state law claim on the merits, the Court will deny the motion to dismiss the state law claim.

II.     Attorneys' Fees

Last, Defendant requested attorneys' fees under 42 U.S.C. § 1988. ECF 18, PgID 415, 449. A fees award under § 1988 "against a losing plaintiff in a civil rights action is an extreme sanction and must be limited to truly egregious cases of misconduct." *France v. Chippewa Cnty.*, No. 20-cv-248, 2021 WL 1572833, at *6 (W.D. Mich. Apr. 22, 2021) (quoting *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001)). Defendant neither developed her argument for attorneys' fees nor explained

11

what Plaintiff did to deserve such an extreme sanction against her. ECF 18, PgID 415, 449. And, upon review, the Court finds that "there was no misconduct by [Plaintiff] and the claims, although dismissed, were not frivolous, unreasonable, or groundless." *France*, 2021 WL 1572833, at *6 (declining to grant attorneys' fees to judicial defendants after granting their motion to dismiss). Thus, the Court will deny Defendant's requests for attorneys' fees.

## CONCLUSION

In sum, the Court will grant in part and deny in part Defendant's motion to dismiss. The Court will grant the motion as it relates to the federal claims and deny the motion as it relates to the state law claim. The Court will, however, decline to exercise supplemental jurisdiction over the state law claims. The 36th District Court's motion to dismiss is denied as moot. And finally, the Court will deny Defendant's requests for attorneys' fees.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that Defendant Judge Nancy M. Blount's motion to dismiss [18] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the 36th District Court's motion to dismiss [16] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the § 1985 conspiracy and *Monell* claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the state law claim is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's request for attorneys' fees is **DENIED**.

This is a final order that closes the case.

**SO ORDERED**.

        s/ Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: June 11, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 11, 2021, by electronic and/or ordinary mail.

        s/ David P. Parker
        Case Manager